JUDITH EHRENKRANZ *v.* JOSEPH H. EHRENKRANZ
(2445)

HULL, DUPONT and BORDEN, Js.

Argued May 9—decision released August 14, 1984

*Wesley W. Horton,* with whom, on the brief, was *Arthur E. Balbirer,* for the appellant (defendant).

*J. Daniel Sagarin,* with whom, on the brief, were *Sheila K. Rosenstein* and *Ria D. Simon,* for the appellee (plaintiff).

HULL, J. The plaintiff and the defendant, who is a rabbi employed by Congregation Agudath Sholom, an orthodox synagogue in Stamford, were married on June 15, 1952. In June, 1981, the wife instituted this dissolution action and, after extensive discovery proceedings, the action was tried before *Hon. Irving Levine,* state trial referee, who, on November 15, 1982, rendered a judgment of dissolution and made awards concerning alimony, property distribution and attorney's fees. The parties' four children were beyond the age of majority and, thus, are not involved in the proceedings.

On this appeal,[1] the husband claims that the court abused its discretion when it made its financial orders, including the award of attorney's fees.

The defendant does not contest the court's finding that his conduct caused the breakdown of the marriage. He stresses the fact that the court accepted both parties' financial claims so that there is no dispute about the underlying financial considerations involved. The defendant simply claims that, in arriving at its decision, the court made a serious error in computation which, under the circumstances of this case, amounted to an abuse of discretion. We agree.

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

The court cited its consideration of relevant case law and the criteria in General Statutes §§ 46b-81 (c) and 46b-82. It then made the following orders material to this appeal: (1) the plaintiff was awarded the defendant's one half interest in the family home, valued by the court at between $160,000, the value claimed by the wife, and $180,000, the value claimed by the husband; (2) the $112,000 mortgage on the house was to be paid by the defendant within one year, later modified by the court to two years; (3) the plaintiff was awarded $2500 per month periodic alimony; (4) the defendant was awarded a condominium owned by him; and (5) other valuable assets of the parties were specifically allocated between the parties.

The court then made the following award which is the nub of this appeal: "The remaining assets, shown in [the defendant's] financial affidavit, dated October 25, 1982, are awarded to him. However, since all his assets, including those hereinbefore awarded, total $669,848 and his liabilities total $467,968.50, one half of the balance of $231,879.50, namely $115,939.75 is awarded to the plaintiff as additional lump sum alimony, and shall be payable in five equal annual installments of $23,188 each, beginning January 1, 1983."

In reaching its decision, the court specifically relied on the defendant's financial summary dated October 28, 1982.[2] The defendant, in his postjudgment motion

---

[2] The following is a summary showing the net worth of the defendant husband as filed in the trial court:

Note: Certain assets are reflected at cost.

Assets:

| | | |
|---|---|---|
| 1. Royce | | $115,000 |
| 2. Avon | | 75,000 |
| 3. Duncan | | 75,000 |
| 4. Kent | | 18,333 |
| 5. Essex | | 20,000 |
| 6. Gateway, Vermont | | 15,000 |
| 7. Lake George | | 4773 |
| 8. Belvedere, Vermont | | 2477 |
| 9. Bayview | | 35,000 |

to reargue, to open or clarify, which resulted in a further hearing, and in his appeal in this court, claims that his net worth, as found by the court, was $231,879.50 including as an asset 100 percent of the value of the family home and, as a liability, the $110,600[3] mortgage on the house. The court erred, the defendant claims, in awarding the house free of the mortgage to the plain-

| | | |
|---|---|---|
| 10. | New Jersey, Rte 70 Associates | 42,500 |
| 11. | 50 shares Basic En. Rsv. | 400 |
| 12. | 1000 shares Sundance Gold | 125 |
| 13. | Money market fund at Paine Webber and on deposit in Israel | 16,700 |
| 14. | Silver Coins | 1000 |
| 15. | Citytrust and Union Trust checking accounts | 540 |
| 16. | Beneficial ownership in condominium at 180 Colonial Road, Stamford, Connecticut | 90,000 |
| 17. | Sapphire stone, cost | 8000 |
| 18. | Fair market value of entire home | 180,000 |
| | Gross Assets—without reflection of liabilities | $699,848 |

Note: The above does not include part E of the husband's financial affidavit pertaining to retirement or pension, as ultimately the plaintiff wife will be sharing to some extent in the same because of periodic alimony payments to be made until her death or remarriage and during the lifetime of the defendant husband.

Liabilities:

| | | |
|---|---|---|
| 1. | Mortgage on jointly owned property of the parties at 80 Third Street, Stamford, Connecticut, apparently all in the name of the defendant husband | $110,600.00 |
| 2. | Citytrust Company, two notes totaling | 255,000.00 |
| 3. | Congregation loan | 30,000.00 |
| 4. | Lawrence Rezak loan | 15,000.00 |
| 5. | Hirsch Wolf loan | 10,000.00 |
| 6. | Payment due to Citytrust Company on November 30, 1982 | 28,500.00 |
| 7. | Pledge to Agudath Sholom | 9,000.00 |
| 8. | Legal fees of the defendant husband through October 21, 1982, only | 9,868.50 |
| | Total Liabilities | $467,968.50 |

Recapitulation:

| | |
|---|---|
| Gross Assets | $699,848.00 |
| Less Liabilities | −467,968.50 |
| Net Worth | $231,879.50 |

[3] There is an immaterial discrepancy between the court finding of a $112,000 mortgage and reliance on a net worth summary showing the mortgage to be $110,600.

tiff, and then awarding the plaintiff one half of his net worth or $115,939.75, without subtracting the $180,000 value of the house from his net worth. The result, he claims, is that with the award of the $180,000 house and $115,939.75 in lump sum alimony, the plaintiff is awarded $295,939.75, which is $64,060.25 more than his net worth. Thus, the defendant claims that this is one of the infrequent dissolution cases in which the trial court has abused its discretion.

" 'The well settled standard of review in domestic relations cases is that this court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. *Gallo* v. *Gallo,* 184 Conn. 36, 50, 440 A.2d 782 (1981).' *McGuinness* v. *McGuinness,* 185 Conn. 7, 13, 440 A.2d 804 (1981). 'As has often been explained, the foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case, such as demeanor and attitude of the parties at the hearing. See, e.g., *Corbin* v. *Corbin,* 179 Conn. 622, 624, 427 A.2d 432 (1980); *Fucci* v. *Fucci,* 179 Conn. 174, 180–81, 425 A.2d 592 (1979); *Jacobsen* v. *Jacobsen,* 177 Conn. 259, 262–63, 413 A.2d 854 (1979).' *McGuinness* v. *McGuinness,* supra. This appeal presents one of the rare cases in which the trial court abused its broad discretion by misapplying the law and by making crucial findings which were not reasonably supported by the facts." *McPhee* v. *McPhee,* 186 Conn. 167, 177, 440 A.2d 274 (1982).[4] The test is whether the court could rea-

---

[4] Two other decisions of the Supreme Court have found an abuse of discretion in a dissolution award. In *Shrager* v. *Shrager,* 144 Conn. 483, 487, 134 A.2d 69 (1957), the Supreme Court set aside a periodic alimony award because the trial court's discretion had been "wrongly exercised." In *Danielson* v. *Danielson,* 174 Conn. 427, 389 A.2d 750 (1978), the court found error in the court's failure to provide financial arrangements in a visitation order for transporting a minor child from Connecticut, where the custodial parent who was an airline pilot lived, to California where the noncustodial parent, who made $100 a week, lived.

sonably conclude as it did; *Koizim* v. *Koizim,* 181 Conn. 492, 497, 435 A.2d 1030 (1980); indulging every presumption in its favor. *Pasquariello* v. *Pasquariello,* 168 Conn. 579, 584, 362 A.2d 835 (1975). " 'A trial court's conclusions are not erroneous unless they violate law, logic, or reason or are inconsistent with the subordinate facts in the finding.' *Kaplan & Jellinghaus* v. *Newfield Yacht Sales, Inc.,* 179 Conn. 290, 292, 426 A.2d 278 (1979)." *Costello* v. *Hartford Institute of Accounting, Inc.,* 193 Conn. 160, 167, 475 A.2d 310 (1984); see *Zolan, Bernstein, Dworkin & Klein* v. *Milone,* 1 Conn. App. 43, 47, 467 A.2d 938 (1983).

We are fully cognizant of the reluctance of appellate courts in Connecticut to disturb the discretionary findings of the trial court in dissolution cases. This case is a typical one in this regard. Delay and uncertainty create hardship for all concerned, more frequently for the recipient of the disputed award. Mounting attorney's fees cut into the eventual award.[5] The tragic stress of a dissolution battle is exacerbated by a retrial.

Reluctance to reverse the trial court's exercise of discretion, however, should not mean that the door is entirely closed to successful appeals in dissolution cases. Limited appellate review in dissolution cases must not be a mere shibboleth on the basis of which the appellate court makes such review a nullity. "We have consistently refused to disturb awards of alimony. . . . This practice does not establish the proposition that such an award should never be disturbed, but rather that it should be disturbed only under the clearest circumstances." (Citations omitted.) *Shrager* v. *Shrager,* supra, 486–87.

The defendant's claim that he is left with a minus net worth must be weighed in view of the facts that

[5] The plaintiff's attorney informed this court during oral argument that, to date, the plaintiff's accrued fees to present and former counsel approximate $30,000.

the payment of the five annual installments of lump sum alimony was not to start until January 1, 1983, and that he was left with substantial income producing assets.

The court, at the hearing on November 24, 1982, without admitting an error in the computation, carefully explained its reasoning as follows: "The Court: But let me make it plain, I was impressed with Rabbi Ehrenkranz's financial ability all through the trial. I think he has excellent ability, and part of what went into my thinking was that he has more ability to earn or to make money than Mrs. Ehrenkranz,[6] who, as far as the Court is concerned, isn't equipped to do very much except run a lingerie store or something which she would have to develop at this point. That is one of the elements which went into my thinking. I'm not going to decide all of them.

"I should also tell you that I meant them to end up with disproportionate amounts. I did not intend an equal division at any point. I thought that was plain from my opinion where I did enter, I did use one of the elements which the statute lists and that is fault and which was, again, a portion of my thinking together with all of the other matters which went into the decision and I used the figures which were submitted to me by Rabbi Ehrenkranz as to his gross worth and his net worth, those, I took those figures. Perhaps I shouldn't have mentioned them because I used them only as a starting point. That was all that it was because I felt that Mrs. Ehrenkranz was entitled to lump sum cash payments so that she would have something to maneuver with, but in arriving at the opinion, I left Rabbi Ehrenkranz with all of the income producing

---

[6] The defendant's affidavit dated October 27, 1982, showed an annual gross income of $118,490; the plaintiff's showed no income.

investments, which is significant because it gives him that income and I thought with his financial ability he would be able to handle this very, very well.

"I realize that he has been deprived of a lot of assets, but this is a dissolution and it was meant to be a division of those assets. So that when I said that he had given her $699,848[7] worth of assets, I did include the house which I gave her. However, as I said, his net worth, which I arrived at, is a starting point as to what to decide to give her by way of further lump sum alimony. . . . [T]hey come to a very substantial amount of money which he's left with. Of course, there he's left with those and he has the income from them and that I felt he could use to make some of the payments. So that I meant her, when I arrived at the $115,000 figure, it was a figure that I felt was equitable under all the circumstances and was not meant to be one half of anything. It was simply meant to be $115,000 and I used that figure to gauge it. So that the Court will make no change in that award." (Footnotes added.)

Although the court stated that the $115,000 figure was not meant to be half of anything, the actual award was "one-half of the balance of $231,879.50, namely $115,939.75 . . . ." The conclusion that odd dollars and cents were not intended to be one half of any particular sum violates reason and is inconsistent with the subordinate facts in the finding. It is a plainly erroneous conclusion.

In our view of the case, it is not necessary to decide whether the total award fell within the reasonable parameters of the court's discretion. An examination of the entire record, however, gives strong reason to conclude that it would so fall.

There is, however, an overriding consideration. The underpinning of the decision is not sound. Such a deci-

---

[7] A factual error by the court.

sion must be based on logic applied to facts correctly interpreted. The rendering of a judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other. A decision that accidentally falls within allowable limits of discretion because of a computation error by the court cannot be allowed to stand. To stretch the concept of limited appellate review in this case in order to find no error because the amount awarded may have been fair, would require this court to usurp the fact finding function of the trial court.

Each party is entitled to overall financial orders which reflect the court's discretion and are based upon the facts elicited and the statutory criteria.

The defendant also appeals from an award of $7500 in attorney's fees to the plaintiff. The plaintiff has $15,000 in liquid assets. The award of $2500 per month and the five year, $23,188 per year lump sum alimony award has been stayed by the defendant's appeal. The award does not have to be paid until November 1, 1985. "Whether a spouse has 'ample liquid funds' with which to pay counsel fees; see *Koizim* v. *Koizim,* 181 Conn. 492, 501, 435 A.2d 1030 (1980); can only be determined by examining the total financial resources of the parties in light of the statutory criteria." *Venuti* v. *Venuti,* 185 Conn. 156, 163, 440 A.2d 878 (1981). The record indicates that the trial court did not abuse its discretion in its award of counsel fees to the plaintiff. See *Howat* v. *Howat,* 1 Conn. App. 400, 408, 472 A.2d 799 (1984).

Whether a new trial will prove to be a Pyrrhic victory for the defendant remains to be seen.

There is error in part, the judgment is set aside as to the award of alimony and the division of property and the case is remanded for a rehearing on those issues in accordance with this opinion.

In this opinion the other judges concurred.