JACQUELINE L. TRUBOWITZ *v.* SHELLEY H. TRUBOWITZ
(3755)

DUPONT, C. J., BORDEN and SPALLONE, Js.

Argued November 5—decision released December 31, 1985

*Wesley W. Horton,* with whom was *Alfred R. Belinkie,* for the appellant (plaintiff).

*Bernard Glazer,* for the appellee (defendant).

DUPONT, C. J. In this appeal from the judgment dissolving the marriage of the parties and from the judgment denying the plaintiff's motion to open that judgment, the plaintiff wife claims an abuse of discretion by the state trial referee (1) in its determination of financial awards, and (2) in its application of federal

tax law with regard to the payment of any capital gains tax incident to the transfer of realty as ordered.

The parties were married in 1952. During their marriage, they had seven children, one of whom was a minor as of the date of the dissolution of the marriage. The marriage was dissolved by a judgment dated July 19, 1984, although the date of the trial court's memorandum of decision was July 18, 1984.

At the time of dissolution, the trial court found that the plaintiff was in good health and employable, and that she had participated significantly in the purchase and development of the real estate holdings of the parties, although the defendant had furnished most of the financing. It further found that both parties are well educated and that the defendant was in good health and had practiced dentistry for many years, with a gross income of approximately $220,000 in 1982.

The parties owned several parcels of real property. The trial court found that the marital home had a value, exclusive of mortgages and necessary repairs, of $412,000. A commercial property, exclusive of mortgages, was valued at $287,000. A share in a real estate venture described as Madonna Mountain was valued at $50,000. A commercial apartment and office building, housing the defendant's dental practice and an apartment in which he lived, was found by the court to have a value of $803,000, exclusive of a $15,000 mortgage. That value was specifically based by the court on the testimony of an appraiser for the plaintiff. Whether that value could have been found, based on his testimony, is the grist of the first issue of this appeal.

The trial court found that in view of "the length of the marriage and the contributions of the parties, the real estate assets should be divided as nearly equally as possible." Accordingly, the court ordered that the

plaintiff would have title to all of the realty except that in which the defendant had his office. On the basis of the court's valuations, the defendant would retain $788,000 worth of the real property and the plaintiff would have $849,000 worth as her share. The defendant was "ordered to pay any capital gains required" by the transfers.

The court divided the personal assets of the parties, giving each certain bank accounts, and each the personalty located in their respective dwellings. The court did not indicate any particular percentage division of these assets and did not individually value them. The sum of $200 per week was ordered as support for the minor child. The defendant was ordered to pay the sum of $15,000 toward the plaintiff's counsel fees and, in lieu of periodic alimony, was ordered to pay to the plaintiff an additional cash sum of $75,000, payable in annual installments of $25,000 over a three year period.

I

The first claim of error by the plaintiff is that the trial court abused its discretion in its determination of the financial awards. This claim is divided into two parts, one relating to the allegedly erroneous valuation of the commercial apartment and office building which was awarded to the defendant, and the other relating to the division of the personalty of the parties.

The trial court found that the value of the particular real estate was $803,000 on the basis of the testimony of the plaintiff's appraiser. The plaintiff claims that her expert testified that the property had a fair market value of $1,071,000, and further that $803,000 was the loan value based on that fair market value, rather than its fair market value. The defendant claims that the witness testified that those were his figures based on a prior appraisal made for a bank in connection with a mortgage application of the parties, but that, on cross-

examination, he had conceded that $800,000 was the fair market value of the property.[1] The plaintiff claims that the trial court could have found fair market value to be either $800,000, if it properly considered a letter from a bank as credible evidence,[2] or $1,071,000, if it chose to accept the appraiser's testimony, but claims that it was clearly erroneous in finding that fair market value was $803,000 when that finding was specifically based on the testimony of the plaintiff's appraiser.[3]

The plaintiff views the trial court's valuation as an *"Ehrenkranz"* error, requiring this court to hold that the foundation for the trial court's judgment is faulty, and therefore an abuse of its discretion, necessitating a rehearing on the division of the assets of the parties. See *Ehrenkranz* v. *Ehrenkranz,* 2 Conn. App. 416, 479 A.2d 826 (1984).

---

[1] The bank had offered a mortgage of $600,000 to the parties. The transcript reveals the following questions and answers on cross-examination of the plaintiff's real estate appraiser: "Q. Then if we are using a loan value of seventy five percent and at six hundred thousand of the loan, then we have a fair market value of eight hundred thousand, isn't that correct? A. Yes."

"Q. If the bank is only going to give six hundred thousand and not eight hundred thousand then the fair market value to a third person buyer is only eight hundred thousand, isn't that correct? A. If that's the maximum loan he can get, I would have to agree with that."

A fair reading of this testimony is that the witness did not concede that $800,000 was the fair market value of the real estate in his opinion, but that *if* a bank would give a mortgage of $600,000 and *if* a loan value is seventy five percent of fair market value, then the property would be worth $800,000.

[2] The claim of the plaintiff that an exhibit, the letter of the bank, could not have been considered by the trial court is without merit. The letter was introduced without objection and the trial court could have construed it, coupled with other evidence, as indicating that the realty had a fair market value of $800,000.

[3] After the court had denied the plaintiff's motion to open the judgment, the defendant attempted to have the court correct "a typo" in order to change its valuation from $803,000 to $800,000. The court refused, stating that its notes indicated a value of $803,000.

The defendant claims that the difference between $803,000 and $800,000 "constitutes a transposition of similar and related figures of a de minimus nature," not rising to the serious error in computation found to be present in *Ehrenkranz*.[4] The defendant further argues that this claimed error should not be considered on appeal because the plaintiff did not, during the course of the hearing on her motion to open the judgment, challenge the court's finding as to the value of the realty, although she attacked almost every other finding of the trial court.[5]

Before reaching the issue of whether the court abused its discretion, it must be determined whether that issue survived, for appeal purposes, after the denial of the plaintiff's motion to open the judgment. Generally, this court is not required to consider claims unless they were distinctly raised at trial or arose subsequent to the trial, but may consider plain error in the interests of justice even if the error was not brought to the attention of the trial court. Practice Book § 3063. The section is often quoted but rarely invoked for the purpose of appellate consideration of issues not previously raised. *Berchtold* v. *Maggi,* 191 Conn. 266, 274, 464 A.2d 1 (1983); *Chaplin* v. *Balkus,* 189 Conn. 445, 447, 456 A.2d 286 (1983); *Valley* v. *Fazzina,* 187 Conn. 423, 428–29, 446 A.2d 1068 (1982).

In the present case, once the memorandum of decision had been filed, the plaintiff was aware of any claimed lack of logic in the trial court's finding of fair market value. Although she sought to correct most of the findings of the trial court during the hearing on her motion to open the judgment, including the valuation of two of the parcels of real estate awarded to her,

[4] See footnote 3, supra.

[5] The motion to open the judgment had as its stated purpose the "effecting (of) certain changes in the Court's Memorandum of Decision filed July 19, 1984."

she sought no correction of the finding as to the value of the realty at issue in this appeal, and, in fact, objected when the defendant attempted to have the court correct its finding of $803,000. Nor did the plaintiff seek an articulation of the factual basis for the trial court's finding of value pursuant to Practice Book § 3082. See *Vaiuso* v. *Vaiuso,* 2 Conn. App. 141, 477 A.2d 678 (1984).

There are no exceptional circumstances which would make it appropriate for this court to consider the plaintiff's claim of error. See *Hartford Federal Savings & Loan Assn.* v. *Tucker,* 181 Conn. 607, 609, 436 A.2d 1259 (1980); *Stoni* v. *Wasicki,* 179 Conn. 372, 426 A.2d 774 (1979). The claimed error does not require a review in the interest of justice, particularly since the plaintiff sought to preclude the trial court from reviewing its finding of valuation. See *Valley* v. *Fazzina,* supra. It would be anomalous to permit a party to challenge, on appeal, the basis of a finding which that party sought to prevent the trial court from correcting. Since the court could have found the valuation to be $800,000, if not $803,000, the failure of this court to remand the case for a further hearing on the issue of the division of assets cannot be equated to a denial of justice.

The plaintiff also appeals from that portion of the trial court's judgment which divided the personalty of the parties. The plaintiff claims that the award to her of less than 50 percent of these assets was an abuse of discretion because there was no good reason to treat them in a manner different from the real property and because the trial court may have taken into account the tuition payments for the minor child which were or will be made by the defendant.

In making its division of the personalty of the parties, the trial court was required to take into con-

sideration the factors enumerated in General Statutes § 46b-81 (c).[6] An examination of the memorandum of decision indicates that the trial court properly considered and weighed the factors set forth in the statute in determining the division of these assets. See *McPhee* v. *McPhee,* 186 Conn. 167, 170–71, 440 A.2d 274 (1982); *Szilagyi* v. *Szilagyi,* 3 Conn. App. 25, 28, 484 A.2d 469 (1984).

No statute requires a trial court to make an equal percentage division of all assets. There is often good reason to treat assets differently. Some assets, such as a business dependent upon the personal services of one party, or objects of art or personal furnishings, cannot be divided equally per item or in toto. One party or the other may have a particular interest in, or claim to, a particular asset, and a trial court is not hampered in making whatever distribution of them it chooses, as long as it does so in accordance with statutory guidelines. The trial court's references to the payment of tuition and education expenses by the defendant did not constitute the improper consideration of a factor not specified by General Statutes § 46b-81 (c). Such statements merely provided the background of the case, and nothing indicates that those payments were a factor in the court's award of the personalty of the parties.

The trial court could reasonably conclude that these assets should have been divided as ordered. See *Leo* v. *Leo,* 197 Conn. 1, 4, 495 A.2d 704 (1985).

[6] General Statutes § 46b-81 (c) provides: "In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

## II

The plaintiff claims as error that the trial court misapplied federal tax law regarding the determination of capital gains tax due to a recent change in the tax law which eliminated the treatment as taxable events of court ordered property transfers in marriage dissolutions. This change in the tax law went into effect on July 18, 1984, one day before the entry of the judgment in this case.[7] The change was brought to the trial court's attention at the hearing on the motion to open the judgment held on November 11, 1984, at which time the trial court heard argument from both sides on the issue. Without specifically addressing the issue of the change in the tax law regarding capital gains, the trial court denied the motion to open.

During the trial of this case, federal tax law provided that a conveyance of property from one spouse to the other incident to a court ordered dissolution of marriage was generally a taxable event. See *United States* v. *Davis,* 370 U.S. 65, 82 S. Ct. 1190, 8 L. Ed. 2d 335 (1962). In *Davis,* the Supreme Court held that a transfer of appreciated property to a spouse or former spouse in exchange for the release of marital claims may result

---

[7] The temporary regulations regarding the treatment of transfers of property between spouses incident to divorce specify the effective date of the amendment to § 1041 of the Internal Revenue Code. The regulations state that, in general, § 1041 applies to all transfers after July 18, 1984. It does not apply, however, to transfers after July 18, 1984, pursuant to instruments in effect on or before July 18, 1984. There are two exceptions to this general rule. First, § 1041 will apply to transfers after July 18, 1984 under instruments that were in effect on or before July 18, 1984, if both spouses (or former spouses) elect to have § 1041 apply to such transfers. Second, § 1041 will apply to all transfers after December 31, 1983, including transfers under instruments in effect on or before July 18, 1984, if both spouses (or former spouses) elect to have § 1041 apply. See Reg. § 1.1041-IT, 1985 Stand. Fed. Tax Rep. (CCH) ¶ 4645BB. It is unclear whether the Internal Revenue Commissioner would treat the transfers ordered by the trial court as having occurred on July 18, 1984, the date of the trial court's memorandum of decision, or on July 19, 1984, the date of the judgment.

in the recognition of a capital gain to the transferor. Under *Davis,* a capital gains tax might be due if a court ordered transfer of all jointly owned real property, incident to a divorce (dissolution) action, resulted in the receipt by one spouse of less than one half of the realty, to the extent of the excess over one half of all of the realty received by the other spouse. Rev. Rul. 74-347, 1974-2 C.B. 26. The parties agree that, under the *Davis* rule, the maximum tax which would have been paid by the defendant was approximately $4000. Since the division of the jointly held realty was substantially equal, however, it is not likely that any tax would be due, even under *Davis.* There is no capital gains tax due under the present law in connection with the transfers to the plaintiff or the transfer by the plaintiff to the defendant.

The only significant difference to the plaintiff arising out of the amendment to the Internal Revenue Code is in her basis for the realty once it was transferred to her pursuant to the judgment. The plaintiff claims that because she cannot obtain the "substantially stepped up" basis for the realty which she would have had under the old law, she "may be liable for a large capital gains tax" at a future date. She is no more precise than that. Even if this is so, the same rule would apply to the defendant, and he too, upon a sale of the realty awarded to him, may, in the future, be liable for a larger capital gains tax than he would have been responsible for had the old law applied.

The trial court ordered the defendant "to pay *any* capital gains tax *required* by these transfers." (Emphasis added.) The wording of such an order indicates that the trial court considered the pending changes in the tax law when it formulated its order requiring the defendant to pay the capital gains tax, if any. Furthermore, the trial court was certainly aware of the issue by the time of the hearing on the plaintiff's motion to open the judgment, when the questions of the payment

of capital gains and the recent changes in the tax laws were argued by both parties. The court's denial of that aspect of the motion to open indicates its intention that, *if* there were a capital gains tax to be paid, the defendant was to pay it. The cornerstone of its decision as to the allocation of real estate was not that such a tax would be due.

There is no error.

In this opinion the other judges concurred.