## Susan Ferrucci v. Frank Ferrucci (4961)

Dupont, C. J., Borden and Daly, Js.

Argued March 4—decision released June 30, 1987

*William R. Moller,* with whom was *Alexandra Davis,* for the appellant (plaintiff).

*Susan W. Wolfson,* with whom, on the brief, was *Donna Decker Morris,* for the appellee (defendant).

Daly, J. In this appeal from the judgment dissolving the marriage of the parties and from the judgment denying the plaintiff's motion to open the judgment, the plaintiff wife claims an abuse of discretion by the state trial referee, acting as the trial court (1) in its determination of financial awards, and (2) in its denial of the motion to open based on a finding that further evidence would not change the financial awards. We find no error.

The parties were married in 1971. They had no children. Both are well educated and possess graduate degrees. The defendant had been employed at the Southern New England Telephone Company, (SNETCO), earning approximately $52,000 annually

before accepting an incentive retirement in 1984. The plaintiff had her own printing business, Color World, Inc., with equity of approximately $127,000, although this amount is disputed. She had several real estate investments with another person worth approximately $80,000. The parties were joint owners of a three-family home in New Haven, the equity of which was valued at $85,000; an investment fund at the Merrill-Lynch brokerage firm valued at $12,000; and some tax free bonds valued at $11,000. The defendant also listed a $22,000 savings plan at SNETCO as an asset.

The marriage was dissolved by a judgment dated October 31, 1985. The court found that the parties were equally culpable in the breakdown of the marriage. Accordingly, the court did not award alimony to either party. The jointly held three-family residence and its furnishings were awarded to the defendant. The Merrill-Lynch account and the tax free bonds were divided equally between the parties.

I

The first issue in this case is whether the trial court abused its discretion in its determination of the financial awards. The plaintiff first claims the trial court abused its discretion by considering the personal activities of the plaintiff after her separation from the defendant when making the financial awards. This claim is without merit.

The trial court found that both parties engaged in sexual activities with others after their separation in late 1983. This finding was made in the context of numerous other findings, all of which related to the court's conclusion that the breakdown of the marriage of the parties was the result of a process of erosion which began in 1974, and that they were equally culpable for that breakdown. Although postseparation sexual behavior of the parties would ordinarily carry less

weight than preseparation behavior in the factual determination of the causes of the breakdown of a marriage, the plaintiff offers no authority, nor are we aware of any, which bars the court from even considering such behavior in making that factual determination. Furthermore, there is no indication here that the court focused extensively or improperly on that behavior of the plaintiff in making its financial awards.

The remainder of this issue can be divided into two parts, one relating to the allegedly erroneous valuation of the plaintiff's equity in Color World, Inc., and in her investments with another person, and the other relating to the division of the personalty of the parties.

### VALUATION OF THE PLAINTIFF'S EQUITY

The trial court found that as of "June 30, 1985, the plaintiff's equity in Color World was approximately $127,000 according to the bookkeeping records kept by her corporation and reported to her company accountant. That figure represented the difference between her corporate assets and its liabilities, or its book value." The plaintiff claims that this figure is inaccurate and is the result of a mathematical error on the part of the court. She relies on the fact that her accountant stated that the shareholders equity in the corporation was $108,778, according to the corporations books rather than $127,000 as stated by the court. According to the trial testimony, the plaintiff's accountant arrived at the $108,778 figure by adding together the value of the company's capital stock, its retained earnings, and its last year's profit. We note that the plaintiff and her accountant failed to include the value of the company's assets, however. Those assets had a net *book value,* depreciated for income tax purposes at the standard five year rate, of $12,415. The assets had been purchased for close to $30,000, and could reasonably have had a higher *market value.* The defendant

claims that the $127,000 figure was correct and included the shareholder's equity of $108,775 and the approximate *market* value of the companies' assets in the amount of $18,000.

The plaintiff views the trial court's valuation of her equity in Color World, Inc., as an *"Ehrenkranz"* error, requiring this court to hold that the foundation for the trial court's judgment is faulty, and therefore an abuse of its discretion requiring a rehearing on the division of the assets of the parties. See *Trubowitz* v. *Trubowitz,* 5 Conn. App. 681, 684, 502 A.2d 940 (1985), citing *Ehrenkranz* v. *Ehrenkranz,* 2 Conn. App. 416, 479 A.2d 826 (1984).[1]

The defendant claims that any flaw in the trial court's valuation of the plaintiff's equity in the corporation is unlike the error necessitating a new trial in *Ehrenkranz* v. *Ehrenkranz,* supra. The defendant argues further that any error in this case was at most a minor computational error and was harmless since it involved the valuation of a single asset and did not affect the overall *allocation* of assets.

Here, the plaintiff argues, essentially, that the trial court could not have found that her equity in Color World, Inc., was $127,000. She claims that there was no evidence to support any figure other than $108,778. We disagree. If the court added the plaintiff's admitted equity of approximately $109,000 to the depreciated book value of the corporations capital assets of approximately $12,500, the court would have arrived at the sum of $121,500, leaving any possible discrepancy at $5500 rather than $18,000 as the plaintiff claims. Furthermore, the court did not find the plaintiff's equity

[1] "The *Ehrenkranz* case involved an erroneous calculation of the valuations of the assets allocated by the trial court which, therefore, led to an erroneous financial award." *Carpenter* v. *Carpenter,* 7 Conn. App. 112, 114, 507 A.2d 526 (1986).

to be $127,000, but stated that such was the case according to the plaintiff's records.

The record clearly indicates that Color World, Inc., was a thriving business. General Statutes § 46b-81 (c) provides that "[i]n fixing the . . . *value* of the property . . . to be assigned, the court, after hearing the witnesses . . . of each party . . . *shall* consider the . . . amount and sources of income . . . [the] liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the . . . appreciation in value of their respective estates." Thus, the trial court could have properly considered the prospects of future acquisition of assets and income and future appreciation of the plaintiff's corporation in determining its value. See *Valante* v. *Valante,* 180 Conn. 528, 429 A.2d 964 (1980). We conclude that the trial court could reasonably have valued the plaintiff's equity in Color World, Inc., as it did.

In regard to her real estate investments with a third party, the plaintiff argues that the evidence did not support the court's conclusion that she had $80,000 of equity in those investments. We disagree.

At trial, there was conflicting testimony as to the value of the various properties owned by the plaintiff, and her equity in them. Determination of the value of the properties is a matter properly left up to the trial court. *E & F Realty Co.* v. *Commissioner of Transportation,* 173 Conn. 247, 253, 377 A.2d 302 (1977). The trier may accept or reject the testimony of an expert, offered by one party or the other, in whole or in part. *Smith* v. *Smith,* 183 Conn. 121, 123, 438 A.2d 842 (1981). *Filipetti* v. *Filipetti,* 2 Conn. App. 456, 458–59, 479 A.2d 1229, cert. denied, 194 Conn. 804, 482 A.2d 709 (1984). "It is the sole province of the trial court to weigh and interpret the evidence before it and to pass

upon the credibility of witnesses." *Smith* v. *Smith,* 185 Conn. 491, 493, 441 A.2d 140 (1981); *Beede* v. *Beede,* 186 Conn. 191, 195, 440 A.2d 283 (1982). We will not retry the facts. See *Carpenter* v. *Carpenter,* 188 Conn. 736, 741–42, 453 A.2d 1151 (1982). The referee could reasonably have determined that the plaintiff's investments with the third party amounted to $80,000. Exclusive of her investment of $40,000 in 204 Bishop Street, New Haven, the record discloses an interest in: (1) Upper State Street Development II in the amount of $27,500; (2) 67-69 State Street in the amount of $30,000; and (3) Upper State Street Development III in the amount of $27,500. We conclude that the trial court's conclusion that the plaintiff had an equity of $80,000 in these properties was reasonable and supported by the evidence.

## PERSONALTY

The plaintiff also claims that the trial court erred in awarding the defendant household furnishings since they were not claimed in his financial affidavit.

In the complaint, the plaintiff requested "[a]n order assigning the estate of the defendant to the plaintiff pursuant to the provisions of Section 46b-81, Connecticut General Statutes, including but not limited to the real estate in which the defendant has an interest." This general claim put in issue all the jointly held property of the parties. *Tsopanides* v. *Tsopanides,* 181 Conn. 248, 249, 435 A.2d 34 (1980). Further, her claim for "[s]uch other and further relief as law and equity may provide," invited the trial court to weigh the claims and assets of each party in making its awards. Id., 250. Finally, the plaintiff is charged with notice that under General Statutes § 46b-81a the court was specifically authorized to assign the property to either party. Id.

## II

The second issue in this appeal is whether the denial of the motion to open was an abuse of discretion. We find no error.

" '[T]he action of a trial court in granting or refusing an application to open a judgment is, generally, within the judicial discretion of such court, and its action will not be disturbed on appeal unless it clearly appears that the trial court has abused its discretion.' " *Grunschlag* v. *Ethel Walker School, Inc.,* 190 Conn. 679, 684, 462 A.2d 1 (1983). In this case, the motion to open was essentially a request that the court retry the case. The plaintiff has no right to a second bite of the factual apple. See *Preisner* v. *Illman,* 1 Conn. App. 264, 268, 470 A.2d 1237 (1984).

When all of the financial factors in this case are placed on the scales of equity and fairness we conclude that the trial court did not abuse its discretion.

There is no error.

In this opinion the other judges concurred.