[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff husband, 53, and the defendant wife, 53, married on February 5, 1967 in Worcester, Massachusetts. Both parties are in good health. The plaintiff graduated from Yale in 1964 and from Columbia's Business School in 1966. The defendant has a B.A. from Vassar and a Master's Degree from Fairfield University.
The plaintiff began his business career with Oxford Paper Company as a marketing analyst. He remained there until early 1968 when he was hired by Blyth Co. as a corporate finance trainee. In 1970 he joined Booke Co., a public relations firm, where he remained for 11 years. He then moved on to Newsome Co., an investor relations firm, as Executive Vice President. In 1982 Foote, Cone Belding bought the business and the plaintiff continued as Executive Vice President for what became a subsidiary. He was terminated in 1986, having attained a salary level of $140,000 augmented by a $60,000 bonus. He also had received stock in the parent company which was spent on educational expenses incurred for the parties' four children. The youngest, Joanna, is still a minor, born on June 2, 1979.
After a short hiatus, the plaintiff was hired as Vice President, Communications by First Boston at a salary of $100,000. A change in management occurred at his employer which led to his being "eased out" in 1989. He opened his own business rendering services the plaintiff described as "financial public relations". He began with one client and at the time of trial had three companies on retainer. He maintains a small office on Madison CT Page 6045 Avenue in New York City. His current billing is a total of $18,000 monthly. He recently completed the preparation of the annual report for a fourth company, receiving $10,000 for his services. He also receives expenses from one of his clients of $20,000 annually that the court finds to be part of his gross income.
The plaintiff's father as donor created a trust on May 15, 1981, amended on June 2, 1989 (Plaintiff's Exhibit #6) naming the plaintiff sole trustee. The design of the trust was to minimize estate taxes, as a "Marital Trust Estate" and a "Residency Trust Estate". From the latter the widow is permitted to withdraw 5% of the principal or $5,000, whichever is greater, annually. Upon the widow's death, the "Residency Trust Estate" passes to the parties' children. The 1989 amendment affected the marital trust provisions only. The widow has a power of appointment exercisable by will and, failing to do so, the remaining corpus, at her death, after payment of taxes, is added to the "Residency Trust Estate". The court finds that the plaintiff has no present or vested interest in the trust although he is an only child.
The parties purchased a home in Greenwich, Connecticut in January, 1976 for $110,000 known as 111 Valley Drive. The defendant's expert witness placed a fair market value of $800,000 on the 4.66 acres of land and $825,000 on the improvements for a total fair market value of $1,625,000 opining that the current use as a single family residence was its highest and best use. It is located in a one acre zone but the witness concluded that, because deed restrictions limiting the number of divisions of the original parcel had been reached (cf. Defendant's Exhibit T) development of additional lots was contingent on factors outside of the owners' control, (Defendant's Exhibit U).
The plaintiff's expert witness arrived at a fair market value of $1,950,000 for the parcel. He opined that the value, assuming the parcel can be divided, is $2,250,000.
The court has concluded that the fair market value of the marital home is $1,625,000.
The defendant did not attempt full time employment during the years spent raising the four children. She did engage in various part time pursuits, never generating substantial income.
The plaintiff left the marital home in April, 1984, returning for several short visits over the ensuing three or four years. By CT Page 6046 1988 the separation had become a permanent one. The plaintiff continued to support his family enabling the defendant to meet the recurring bills of the household. This present action was not the first suit for dissolution. A business relation with Theodora Simmons ripened into a social one and then one of intimacy. His job loss was caused, at least, in part, by l'affaire de coeur. The relationship continued. The court has concluded that the plaintiff's infidelity was the precipitating cause of the marriage breakdown. Ferrucci v. Ferrucci, 11 Conn. App. 369.
In late 1992 the plaintiff purchased a co-op 70 East 96th Street, New York, New York for $415,000, borrowing $200,000 from a lending institution and $173,000 from his father's residuary trust, (Plaintiff's Exhibit 7) at 5.6% annual interest. This loan appears to be permitted pursuant to paragraph sixth "Powers of Trustee", sub-paragraph (c). The defendant took issue with the statement. On the plaintiff's loan application that the cash to balance was the plaintiff's. The court finds that the defendant has no standing to question the transaction. The lender and the beneficiaries are not parties to this action and the court finds no reason to examine the transaction's propriety. The plaintiff's accountability will take place in another court on another day.
The plaintiff's other assets consist of his bank accounts listed at $29,955; his retirement accounts listed at $159,304; his brokerage accounts at $113,859; his mutual funds at $46,297; his office security deposit at $6,000; his interest in the furnishings and miscellaneous personal property at $50,000; and his 1980 Mercedes 300 TD at $500.
The defendant's assets, in addition to the marital home, consist of her checking and savings accounts listed at $10,108; solely owned securities listed at $65,004; 600 shares of Time Warner and 90 shares of Tempe-Inland valued at $14,531 for defendant's half interest; and retirement funds listed at $1,717. In addition, the defendant is the owner of four life insurance policies insuring the plaintiff for total face coverage of $85,000 and having net cash surrender value totaling $19,660 (Plaintiff's Exhibit #12).
The defendant is also claiming an equitable interest in the New York City co-op. The court finds that the defendant did not contribute to its acquisition or inattendance, it having been acquired several years after the marriage had failed, and the court concludes that there is no basis for this claim. CT Page 6047
The plaintiff had a demonstrated net profit from his business in 1994 of $162,331 as shown on his schedule C (Plaintiff's Exhibit #4), $140,464 in 1993 (Plaintiff's Exhibit #3); and $133,545 in 1992 (Plaintiff's Exhibit #2). The 1995 1040, which has not yet been filed, lists the plaintiff's net profit from his business as $186,694 (Plaintiff's Exhibit #5). Although the defendant had demonstrated a greater earning capacity during his years as an executive, e.g. his W-2 from First Boston in 1988 for $243,578 gross wages (Defendant's Exhibit Q), this court finds no basis to apply the Miller v. Miller, 181 Conn. 610 earning capacity test.
Having received the evidence in light of the applicable statutes, in particular § 46b-81, 46b-83 and 46b-84 as well as relevant case law, and finding that the defendant's continuous residence in Connecticut provides the court with jurisdiction, the court enters judgment dissolving the marriage on the ground of irretrievable breakdown and, as part of the decree issues the following orders.
1. The parties are awarded joint legal custody of the minor child. The child's primary residence shall be with her mother and her father is given liberal and flexible visitation rights.
2. The plaintiff shall pay to the defendant, as unallocated periodic alimony and child support, the sum of $7,000 per month until May 31, 1998. In addition, the plaintiff shall continue to pay the private school expenses for the minor child until her graduation from high school or to her 19th birthday, whichever event first occurs. The court notes the plaintiff's weekly income exceeds the child support guidelines maximum. The unallocated order is justified by tax considerations.
3. The plaintiff shall continue to maintain medical insurance for the minor child, with uninsured deductibles and uninsured bill balances shared equally by the parties. Section46b-84 (d) C.G.S. shall apply. The plaintiff shall not impair any medical insurance COBRA rights of the defendant.
4. The defendant is awarded 50% of the plaintiff's interest in 111 Valley Drive, Greenwich. If a quit-claim deed affecting this order is not delivered in 30 days this transfer shall be completed by invoking the statute.
The defendant shall continue to enjoin exclusive use of CT Page 6048 said premises and she shall pay the mortgage, current taxes, homeowners' insurance, utilities, heat and ordinary maintenance not exceeding $500 for any one bill or estimate any item exceeding said limit shall be submitted to the plaintiff for consent.
The premises shall be listed for sale on March 1, 1988, or sooner upon defendant's sole election. Any aspects of sale the parties cannot agree upon may be submitted to the court for further articulation, Roberts v. Roberts, 32 Conn. App. 465. The net proceeds shall be divided as the percentage of ownership dictates.
5. As of June 1, 1998, or upon the sooner sale of the marital premises, the plaintiff shall pay the sum of $4,300 monthly as periodic alimony for a period of 120 months or until the sooner remarriage of the defendant, the death of either party, or further court order. The term is non-modifiable and shall not be extended despite any substantial change in circumstances, Scoville v.Scoville, 179 Conn. 277, Rau v. Rau, 37 Conn. App. 209.
6. The plaintiff shall assign his interest in the jointly owned shares of Time Warner and Tempe-Inland to the defendant.
7. Any furnishings in the marital home claimed by both parties shall be submitted for further articulation by the court.
8. The parties shall otherwise retain their respective assets and be solely responsible for their respective debts including litigation expenses.
The attorney for the plaintiff shall prepare the judgment file.
HARRIGAN, J.