[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties to this dissolution action enjoyed several financially successful years in the 80's and 90's as a result of their joint efforts to establish and develop Cine-Med, Inc., a business they incorporated in 1982 to produce medical education materials in a variety of mediums. Now that their marriage has been dissolved[1] they are at issue, among other things, over the present value of their corporation and the disposition of their respective 26% shares. They also dispute the value and distribution of several pieces of commercial real estate purchased over the past several years. Finally, the defendant, Mr. McGovern, denies a continuing obligation to support Mrs. McGovern for more than a brief period and a minimal amount.
Suanne and Leo McGovern were married at Woodbury, Connecticut on April 14, 1973. Therefore, on the return date they had been CT Page 12223 married almost 22 years. There are three children issue of the marriage, all of whom have reached their majority.
Mrs. McGovern, the plaintiff, is 49 years old, and in August 1997 she secured a ".8" teaching position in the Watertown school system, paying her approximately $33,000 annually. Her net weekly income, based on a pay stub submitted by agreement after the close of all the evidence and marked as Exhibit UU, is $448. Although Mrs. McGovern claimed weekly expenses of $1,290 in the financial affidavit she submitted at trial, the court has adjusted that amount to eliminate expenses claimed for her adult children and to reduce other expenses to a more reasonable amount. Based on these adjustments, the court finds that Mrs. McGovern's weekly expenditures for reasonable and necessary expenses are approximately $770.[2]
In addition to her 26% interest in Cine-Med, Mrs. McGovern owns the former family home at 94 Old Town Farms Road in Woodbury jointly with Mr. McGovern, and she has the same ownership interest in a commercial property located at 121 Main St. North in Woodbury. Mr. McGovern and she also own stock in a telephone company worth approximately $18,000. Mrs. McGovern has a 401K account of $20,000 and an IRA of $9,000. When the trial began she showed liabilities of $28,000 on her financial affidavit, all but $3,000 of which represented counsel fees.
Mrs. McGovern has an interest in an irrevocable trust created by her mother and stepfather, and the parties agreed that the present value of her share in that trust is $165,000. She has not received any funds from the trust and, according to its terms, will not receive any until the death of her mother. Moreover, Mrs. McGovern's share is subject to reduction according to the needs and desires of her mother during her lifetime. Therefore, the present value of Mrs. McGovern's share is not probative of what the trust may actually be worth to her, if anything, when the time comes for its distribution.
Since Mrs. McGovern's mother is still living, her interest in this trust may be considered no more than an expectancy. SeeRubin vs. Rubin, 204 Conn. 224, 232 (1987); Bartlett v. Bartlett,220 Conn. 372, 376, 381 (1991). In any event, the value of her interest is undeterminable at this time. Therefore, the court will not include the present valuation of Mrs. McGovern's interest in the parties' marital estate. When Mrs. McGovern's share is determined, her receipt of it may serve as a basis for CT Page 12224 modification of the periodic alimony orders entered as part of the dissolution. Id., 380-84. See also Eslami vs. Eslami,218 Conn. 801, 806-08 (1991).
Mr. McGovern is 59 years old. While he suffers from a number of illnesses, his physician's testimony made it clear that none of these conditions prevent him from carrying on the type of business-related activities necessary for him to continue his entrepreneurial career.
When the trial of this matter began in March 1997, Mr. McGovern showed net weekly income on his financial affidavit of $1,567, of which $756 resulted from his employment at Cine-Med. Shortly thereafter, however, although he was and continues to be the chief executive officer of that corporation, he was "fired" by his son, Kevin, who has been the president of the corporation for approximately three years and is responsible for its day-to-day operations. On a financial affidavit filed thereafter, Mr. McGovern showed net weekly income of only $909, $289 of which represented unemployment compensation.
Having heard the testimony of both Mr. McGovern and Kevin McGovern as to the circumstances surrounding the "firing" of Mr. McGovern, the court is skeptical. Kevin McGovern is Mr. McGovern's son from a prior marriage and Mrs. McGovern's stepson. He came to live with the parties when he was 14 years old, and Mrs. McGovern was responsible for his care until he was graduated from high school. This is the same Kevin McGovern who, nevertheless, fired Mrs. McGovern from her position at Cine-Med in February of 1996, despite the fact that she was a 26% shareholder and had worked continuously for the business from its inception in 1982. The court cannot escape the impression, and it finds, that the Messrs. McGovern have combined to force Mrs. McGovern out of the business and, through the "firing" of Mr. McGovern, to reduce his apparent ability to provide support for Mrs. McGovern in the future.
Notwithstanding the court's skepticism about the genuineness of Mr. McGovern's reduction in income while this case was on trial, its findings as to his ability to support Mrs. McGovern need not be based on speculation. A constant factor on Mr. McGovern's financial affidavits is his income from Northwood LLC and 40 Main Street North LLC, two real estate management firms of which he is part-owner. Those firms generated far more income that was available to Mr. McGovern during 1995 and 1996 than is CT Page 12225 shown on his financial affidavits. For example, based on Northwood's partnership return for the year ended December 31, 1996 (Exhibit TT), its net income was $124,000, after depreciation expenses are deducted from the expenses it claimed for tax purposes.[3] Similarly, and based on its return for 1995 (Exhibit CC), Northwood's actual net income for that year was $128,000. Since Mr. McGovern is the 90% owner of Northwood, 90% of its net income ($115,200) is available to him, whether or not he actually withdraws it as cash distribution. See Stearns v.Stearns, 4 Conn. App. 323, 325-26 (1985). The same analysis applies to 40 Main Street North LLC, and its net income in 1995 was $21,842.[4] As one of three partners, Mr. McGovern was entitled to one-third, $7,281. Thus, his gross income from his shares in these two LLC's in 1995 was $122,481. The court's orders concerning Mr. McGovern's continuing obligation to support Mrs. McGovern by way of alimony payments will be based upon findings as to his available income, after deduction of appropriate taxes, from the funds available to him from these LLC's.
Mr. McGovern's reasonable and necessary weekly expenses are difficult to estimate accurately post-divorce because of his proposal, which the court will adopt, that he obtain a loan to pay off the mortgages on the former family home. No evidence was introduced as to the effect this will have on his weekly expenditures. The court does think that his housing costs are unreasonably high, because of his purchase, while this divorce was pending, of a house with a fair market of $275,000 and his assumption of substantial mortgages with which to finance the purchase. Given his substantial income, the court finds that he has sufficient income to meet the obligations imposed as part of this dissolution and meet his own reasonable and necessary expenses.
Mr. McGovern's assets consist of his 26% interest in Cine-Med, his 50% interest in the former family home and in 121 Main Street North and his interests in 40 Main Street North LLC (1/3), Northwood LLC (90%) and his present home at 462 Main Street South. In addition, he has a 401K accumulated during his employment at Cine-Med worth $145,000 and an IRA of $9,000. His liabilities consist of a $15,000 debt owed to the Bank of Boston, counsel fees in the amount of $43,000 as of July 1997 and a contingent liability arising out of a lawsuit in which he is a defendant, variously estimated at $109,000 (March 1997) and $200,000 (September 1997). CT Page 12226
The court has considered all of the criteria of Sections46b-62, 46b-81 and 46b-82 of the General Statutes, together with the applicable case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account", Scherr v.Scherr, 183 Conn. 366, 368 (1981), this court will not recount those statutory criteria and the evidence, other than as stated subsequently in this memorandum. "The court is not obligated to make express findings on each of these statutory criteria."Weiman v. Weiman, 188 Conn. 232, 234 (1982). Suffice it to say that the court must consider all the statutory criteria in determining how to divide the parties' property in a dissolution proceeding, Leo v. Leo, 197 Conn. 1, 5 (1985), and need not give equal weight to each factor. Kane v. Parry, 24 Conn. App. 307,313-14 (1991).
As is customary, each party expended considerable time and effort attempting to persuade the court that the other party's actions were the principal cause of the breakdown of this marriage. Mrs. McGovern claimed that Mr. McGovern was overbearing and controlling and emotionally abusive of her, their children and his children from a prior marriage. She also alleged physical abuse by Mr. McGovern of some of the children. For his part, Mr. McGovern claimed that Mrs. McGovern drank to excess and was insufficiently caring and attentive to his several illnesses. In a marriage of this duration it is always difficult for the court to conclude with confidence what caused its breakdown. Nothing in the evidence here provides a basis for such conclusions; therefore, in distributing the parties' property and in determining Mr. McGovern's continuing obligation to support Mrs. McGovern, the court will not assign weight to this factor.
As indicated at the outset of this memorandum, a principal issue between the parties is the disposition of their ownership interests in Cine-Med. Mrs. McGovern presented a business evaluator who, based on an analysis of Cine-Med's operations over several years, testified to a fair market value of the company as of December 31, 1995. The court found this witness' qualifications to be exceptional and his testimony credible but in the end rejects his evaluation of the company because it is based on outdated information. Since 1995 the business of the company has declined considerably. While Mrs. McGovern urges the court to be skeptical of the company's current financial status, as reported by Mr. McGovern and his son, Kevin, the court has no CT Page 12227 reliable evidence contrary to their reports as to Cine-Med's declining sales and income. Moreover, the court concludes it is unlikely that Mr. McGovern would have allowed the business to decline to the degree that it has only to affect the outcome of these proceedings.
At the same time Mr. McGovern's proposal that Mrs. McGovern's 26% share be transferred to him for a payment of $35,000 is clearly inequitable. That figure hardly represents the book value of Mrs. McGovern's interest in the business, and that value is clearly less than the company's present fair market value. Cf.Ferrucci v. Ferrucci, 11 Conn. App. 369, 371-72 (1987). Cine-Med occupies a specialized niche in the medical education business and has for many years. Based on its mostly successful record as a going concern since 1982 and its ability to fulfill a particularized need for medical education, it clearly has a fair market value. The court has no reliable evidence, however, of what that fair market value is. In such a situation the court's obligation equitably to dispose of the parties' property interests at the time of the dissolution suggests only one appropriate alternative; viz., the appraisal of the business to determine present fair market value, the sale of the parties' controlling interest in the business and distribution of the proceeds in an equitable fashion, which the court concludes would be on an equal basis. See Ridolfi v. Ridolfi, 178 Conn. 377,378-79 (1979). This alternative is particularly appropriate in this case because both parties are now out of the employ of the business and disavow any intention to resume involvement in it. The court's orders will reflect this conclusion.
The fair market value of the parties' remaining assets is $807,000, as indicated in the following table.
1. 94 Old Town Farm Rd. 33,000
2. 462 Main St. South 26,000
3. Northwood LLC 450,000
4. 121 Main St. North 42,000[5]
5. 40 Main St. North 55,000
6. Phone stock 18,000 CT Page 12228
7. 401K (Mrs. McGovern) 20,000
8. 401K (Mr. McGovern) 145,000
9. IRA (Mrs. McGovern) 9,000
10. IRA (Mr. McGovern) 9,000 -----------
Total $807,000
Throughout the parties' marital and business relationship, until 1996, Mrs. McGovern was an equal and active participant in the conception, birth, growth and development of Cine-Med. Furthermore, while she was actively engaged in the business, Mrs. McGovern was also raising the parties' three sons and, for several years, Mr. McGovern's two sons from his prior marriage. These factors alone entitle Mrs. McGovern to an equal share in the division of the parties' assets. See O'Neill v. O'Neill,13 Conn. App. 300, 311 (1988); K. Silbaugh, "Turning Labor into Love; Housework and the Law", 91 Northwestern U.L. Rev. 1, 17-21, 57-58 (1996).
Mrs. McGovern argues for a greater than equal share of the assets because of Mr. McGovern's allegedly superior ability to acquire assets in the future. Whether or not Mr. McGovern has such an ability is questionable in the court's view. In addition, the method of division of the parties' assets which the court adopts will result in Mrs. McGovern having far more of the liquid assets of the parties.
Accordingly, the court will distribute the assets essentially as suggested by Mr. McGovern. That is to say, Mrs. McGovern will receive the former family home and Mr. McGovern the other real estate, including his own present residence. He will be obligated to borrow funds with which to pay off the mortgages on the former family home or, if he is unable to do so, to bear the responsibility for continued payments on those mortgages and indemnify and save Mrs. McGovern harmless. After a period of time he will also be required to refinance those mortgages. In order to effect an equal split of the assets, the court's orders will provide Mrs. McGovern with all of the phone company stock jointly owned by the parties, will allow her to retain her 401K and IRA and will require Mr. McGovern to transfer sufficient funds from his IRA to balance the parties' columns. As part of the asset CT Page 12229 distribution Mr. McGovern will be given credit for the loan which he will be required to take to pay off the encumbrances on the former family home and for an additional $43,000, his documented premarital assets.
The distribution of the parties' assets post-divorce is indicated by the following table.
Mrs. McGovern Mr. McGovern
1. 94 Old Town Farm Rd. $250,000
2. 462 Main St. South $ 26,000
3. Northwood LLC 450,000
4. 121 Main St. North 42,000
5. 40 Main St. North LLC 55,000
6. Phone stock 18,000
7. 401K (Mrs. McGovern) 20,000
8. 401K (Mr. McGovern) 85,500 60,500
9. IRA (Mrs. McGovern) 9,000
10. IRA (Mr. McGovern) 9,000 ------------- ------------
Total $382,500 $642,500
Less: Loan payable 217,000
 Less: Premarital assets 43,000 ------------- ------------
Total $382,500 $382,500
The final disagreement between the parties is over Mr. McGovern's obligation to continue to support Mrs. McGovern. Throughout their marriage, even when they were jointly involved in the operations of Cine-Med, Mr. McGovern always received much greater income than Mrs. McGovern. During the Cine-Med period, as CT Page 12230 chief executive officer, he saw to it that, while his annual income ranged from a low of $93,000 in 1995 to a high of $356,000 in 1992, Mrs. McGovern's annual income from the business never exceeded $9,000 before 1995, when it was $49,000. Thus, Mrs. McGovern has always been dependent on Mr. McGovern for her financial support. While Mrs. McGovern's new, part-time teaching position will generate almost $33,000 in annual gross income, the court has found earlier in this memorandum that Mr. McGovern's gross income from Northwood LLC and 40 Main Street North LLC in 1995 was $122,481. In 1996 it can be estimated at $118,000.
Thus, it is clear that Mr. McGovern continues to have far greater income available to him. The net weekly equivalents of these gross annual figures are $448 for Mrs. McGovern, as indicated by Exhibit UU, and $1,451 for Mr. McGovern, based on estimates of his federal income tax liability (using his effective tax rate for 1995[6]), state income tax liability and self-employment tax (since he is no longer an employee). Mrs. McGovern argues for equalization of the parties' incomes, and that would normally be the court's goal after a marriage of this duration and considering the other statutory factors.
Here, however, pursuant to other orders of the court, Mr. McGovern is to assume responsibility for both mortgages on the former family home either by way of an immediate payoff, using the proceeds of a loan he will obtain, or by continuing to make the monthly payments due on those mortgages. In either event such an undertaking on Mr. McGovern's part is clearly in Mrs. McGovern's interest, represents a contribution by Mr. McGovern to her support, and requires a greater income stream for him to accomplish.
Therefore, the court's order will be that Mr. McGovern meet his remaining obligation to support Mrs. McGovern by making up the difference between Mrs. McGovern's current net income and her weekly expenses, found earlier to be $770, i.e., by a weekly payment sufficient to net her $325 after her payment of income taxes at the rate established on her current paystub, Exhibit UU.
Given Mrs. McGovern's educational achievements, however, the court expects that she will bear a greater share of her own support as time goes by. Therefore, although the court believes that Mr. McGovern has a continuing obligation to support Mrs. McGovern until his death or her death or remarriage, the court's orders will provide for a lesser amount of support in future CT Page 12231 years.
Based on the findings and conclusions stated above, as well as the court's consideration of all the testimony and exhibits introduced at trial, its observation of the witnesses and assessment of their credibility, the court enters the following orders:
1. The parties shall promptly engage the firm of Parker Benjamin, Inc. of Farmington, Connecticut to determine the fair market value of their 52% share of Cine-Med, Inc. Upon the completion of the valuation, the parties' 52% share of Cine-Med shall be promptly offered for sale by the parties at the fair market value determined and utilizing the marketing resources of Parker Benjamin, and upon the completed sale of their interest, the parties shall share equally in the net proceeds of such sale after deduction of the customary costs involved in the sale of a business. Should Parker Benjamin, Inc. be unavailable for either of these purposes, the plaintiff may select an alternate firm or individual after consultation with the defendant. The parties shall share equally in the cost of the valuation of Cine-Med, Inc. by Parker Benjamin or the alternative chosen by the plaintiff. The court retains jurisdiction to enter any orders necessary to effect the valuation and sale of Cine-Med, Inc.
2. Within 30 days the defendant shall transfer to the plaintiff by way of a quitclaim deed all of his right, title and interest in the former family home located at 94 Old Town Farm Road in Woodbury. At the same time he shall secure a loan in an amount sufficient to pay off the entire balance of the first and second mortgages which encumber those premises, and, upon securing said loan, he shall pay off those encumbrances. Should the defendant fail to secure a loan in a sufficient amount to pay off both encumbrances, he shall be solely liable for payments which continue to be due on either or both of those encumbrances, and he shall indemnify and save the plaintiff harmless from any liability thereon.
Should the defendant not obtain a loan and pay off the present encumbrances, by no later than five years from the date of dissolution he shall refinance those encumbrances, removing the plaintiff from the outstanding notes evidencing the debts.
3. Within 30 days the plaintiff shall by way of a quitclaim deed transfer all of her right, title and interest in the jointly CT Page 12232 owned property located at 121 Main Street North, Woodbury, to the defendant. Thereafter, the defendant shall be solely responsible for payment of the outstanding encumbrance(s) on that property, without contribution by the plaintiff, and he shall indemnify and save her harmless from any liability thereon. Within five years of the date of dissolution, he shall refinance the encumbrances, removing the plaintiff from any liability on the note(s) evidencing those encumbrances.
4. The defendant shall retain, without claim by the plaintiff, his interests in 40 Main Street North LLC, Northwood LLC and 462 Main Street South, Woodbury.
5. The defendant shall transfer to the plaintiff all of his interest in the shares owned jointly by the parties in the Woodbury Telephone Company.
6. The plaintiff shall retain, without any claim by the defendant, her IRA and her 401K.
7. The defendant shall transfer to the plaintiff by way of a Qualified Domestic Relations Order or other vehicle intended to eliminate or minimize the tax consequences of such a transfer $85,500 from his 401K by December 15, 1997. The parties shall share equally in any tax liability that may arise out of this transfer. The defendant shall retain, without claim by the plaintiff, his IRA.
8. Until his death or until the death or remarriage of the plaintiff, the defendant shall pay the plaintiff periodic alimony. For three years from the date of this memorandum he shall pay the sum of $385 weekly. Thereafter he shall pay the sum of $275 weekly.
9. Commencing March 31, 1998, the defendant shall provide to the plaintiff a copy of the federal income tax returns to be filed by him for the preceding calendar year as well as the partnership returns to be filed by Northwood LLC and 40 Main Street North LLC and any other business entity of which the defendant may become an owner or part-owner. Immediately upon the death of her mother, the plaintiff shall notify the defendant of that occurrence as well as the valuation of her share in the irrevocable trust created by her mother and stepfather and the terms upon which her interest is to be paid. CT Page 12233
10. Each party shall be responsible for her and his counsel fees without contribution by the other party.
SHORTALL, J.