[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties were married in Galaway Gardens, Georgia on December 18, 1971, and have been residents of the State of Connecticut for more than twelve months next preceding the date of the filing of this complaint. There are three minor children issue of this marriage, Matthew Kelly, born May 27, 1974, a Trumbull high school senior, Michael Kelly, born December 23, 1976, a student in the alternative learning program at Trumbull CT Page 589 and Allison Kelly, born August 25, 1982. The two sons presently reside with the father while the daughter presently resides with the other.
The plaintiff, age 42, is a high school and college graduate with a B. S. degree in education from Florida State University. She is not licensed to teach in Connecticut. This is her first marriage and she enjoys apparent good health albeit she is prone to pneumonia and bronchitis and suffers from a "chronic fatigue syndrome." The plaintiff has worked periodically during the course of the marriage and her pregnancies at a variety of jobs. She presently works approximately twenty nine hours weekly in fund raising activities for Norwalk Community College at a $14.00 hourly rate and she also works approximately five hours weekly as a real estate relocation coordinator.
The plaintiff was twenty years old at the time of her marriage to the defendant who was then and except for a relatively brief hiatus has been in the United States Army. The wife relates to having moved seven times during the first ten years of her marriage. The couple purchased their second home on Stone House Road in Trumbull, Connecticut in 1979 for $69,900.00. The plaintiff's father loaned the couple $30,000.00 which they used for the home purchase. This home was sold in 1983 for approximately $103,000.00 which the couple used to purchase the present marital residence on Tashua Road in 1983 for $169,900.00. The couple jointly agreed to seek marriage counseling and participated with Dr. Gary Roper for approximately 1-1/2 years in a failed attempt to save the marriage. The plaintiff also relates that she sought sexual counseling in a further attempt to better the marriage and is presently in divorce counseling.
The plaintiff's financial affidavit reflects gross weekly income of $794.85 which includes alimony of $195.00 and child support of $130.00 with a net income of $598.90. She lists $804.70 in weekly expenses. She shows assets of $96,835.00 comprised of a one half interest or $88,058.00 in the marital residence which she values at $321,400.00, a 1987 Voyager automobile valued at $5,000.00 less a loan balance of $2,500.00 $2,000.00 in bank accounts, $927.00 cash value in a life insurance policy and a $3,400.00 investment. She lists liabilities of $52,235.00 which include the $30,000.00 loan from her father used for the house Purchase, a second loan of $11,000.00 from her father, $903.00 in personal property taxes to the Town of Trumbull, approximately $4,500.00 in various credit card debts, $1,500.00 for counseling services and $4,000.00 in attorney fees. She further lists an anticipated $7,000.00 dental bill for Allison and Michael. The plaintiff CT Page 590 further related that each of the parties brought a car to the marriage and that she had cashed her pension for kitchen improvements in the marital residence.
The defendant, age 43, is a West Point graduate and has additional credits toward a Masters Degree at Fairfield University. He relates to being in good health. He has spent sixteen years in the military service and needs four more years for retirement benefits. He currently holds the rank of Major and serves as executive officer with a field battalion reserve group in Norwalk. The husband feels that he has a very good relationship with all three children despite that fact that he has always "done the dirty work and cured the inconsistencies caused by his wife in disciplining the children." He professes a close personal and emotional tie with all three of his children. He relates that during his earlier Army career he was admonished for the lack of interest which his wife showed in Army function and was advised that wives of junior officers were expected to participate in Army activities. The husband is hoping for both a military promotion and that he will be allowed to remain in the service until he completes the twenty years necessary for retirement benefits. He has inherited approximately $15,000.00 during the marriage.
The defendant's financial affidavit reflects a gross weekly income of $1,181.00 with a net weekly income of $1,045.50. He lists $1,222.00 in weekly expenses mostly associated with household upkeep and expenses relating to the needs and requirements of the children. He shows assets of $51,703.00 of which $49,241.00 represents his interest in the marital residence which he values at $225,000.00, $962.00 in bank accounts and a 1987 Honda automobile which he values at $1,500.00. The husband shows $21,615.00 in liabilities consisting of a $3,400.00 debt to Sears, a car loan of $3,945.00, bank and credit card debts of $2,000.00, personal property taxes of $1,200.00, a business related debt of $1,100.00 and $10,000.00 in attorney fees.
Evidence was presented by both sides concerning the causes for the marital breakdown. The couple jointly agreed to seek marriage counseling with Dr. Gary Roper which lasted for approximately 1-1/2 years. The wife portrayed the husband as being verbally abusive toward her in front of the children with periodic threats of physical abuse which seldom materialized. She alleged that her husband had an alcohol problem "which made him meaner and more explosive than normal and that drinking was always a part of his life." She related that furniture had been broken, kicked and thrown about by the husband. She stated that the husband had engaged in three extra marital affairs during the marriage. The plaintiff felt that there was a "sexuality CT Page 591 difference between the parties." She participated in sexual counseling and concluded that she was inhibited. She is presently in divorce counseling. The wife admitted that she had engaged in one extra marital affair of five months duration with her children's doctor. She stated that she terminated it because "she realized it was morally wrong and that she had made a mistake and a wrong choice."
The husband denied many of his wife's substantiative allegations of misconduct concerning the alleged physical abuse and alcohol problem. On the contrary he claimed to be a qualified substance abuse counselor. The husband further indicated that he did not want the divorce but admitted there was a lack of both emotional and sexual intimacy in the marriage. He stated that he wanted "a partner, friend and lover but his wife was a companion." The husband felt that his wife's incident of infidelity was the real cause of the marital breakdown because "she didn't quit it."
The evidence presented established that the marriage has irretrievably broken down. Judgment may enter dissolving the marriage on that ground.
With respect to alimony and a division of the property of the parties, the law and elements thereof to be considered are stated in 46b-81 and 46b-82 of the Connecticut General Statutes and are interpreted as follows:
"To begin with, our alimony statute does not recognize an absolute right to alimony. General Statutes 46b-82. Thomas v. Thomas, 159 Conn. 477, 486, (1970). `This court has reiterated time and again that awards of financial settlements ancillary to a marital dissolution, rest in the sound discretion of the trial court.' Posada v. Posada, 179 Conn. 568. 572 (1980).
Although the court is required to consider the statutory criteria of length of marriage, causes for dissolution, the age, health, station in life, occupation, amount and sources of income, assets, and opportunity for future acquisition of assets of each of the parties, Fucci v. Fucci, 179 Conn. 174, 179
(1979), no single criterion is preferred over all others. In weighing the factors in a given case the court is not required to give equal weight to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations, the financial circumstances, both actual and potential, are entitled to great weight." Valente v. Valente,180 Conn. 528, 530-531 (1980).
"A property division ought to accord value to those CT Page 592 nonmonetary contributions of one spouse which enable the other spouse to devote substantial effort to paid employment which, in turn, enables the family to acquire tangible marital assets. The investment of human capital in homemaking has worth and should be evaluated in a property division incident to a dissolution of marriage. We hold, accordingly, that an equitable distribution of property should take into consideration the plaintiff's contributions to the marriage, including homemaking activities and primary caretaking responsibilities." Blake v. Blake, 207 Conn. 217 at 230 (1988), where our Supreme Court cited with approval the language of O'Neill v. O'Neill, 13 Conn. App. 300 at 311 (1988).
Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account," Scherr v. Scherr. 183 Conn. 366,368 (1981), this court will not recount those statutory criteria and the evidence, other than has been previously stated. "The court is not obligated to make express findings on each of these statutory criteria. (46b-82 and 46b-81 (c))." Weiman v. Weiman, 188 Conn. 232, 234 (1982).
"The rendering of a judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other." Ehrenkranz v. Ehrenkranz, 2 Conn. App. 416,424 (1984).
The court has carefully considered all of the criteria and requirements set forth in Connecticut General Statutes 46b-56,46b-62, 46b-81, 46b-82 and 46b-84 as well as all other relevant statutes, the cases dealing with the subject and all of the evidence presented in this particular case in reaching the decisions reflected in the following orders.
1. The Parties shall cooperate to finalize a sale of the marital residence. It shall be sold at the earliest possible date after June 1, 1992 so as to enable Matthew to participate in his High School graduation, for the highest possible price. After payment of the existing first mortgage and repayment of the $30,000.00 loan, without interest, to Charles Taylor, Jr. of Fort Meyers, Florida, the wife's father, the brokerage commission and usual closing costs, the net proceeds shall be divided fifty percent to the wife and fifty percent to the husband. The parties may then use said funds to each procure more modest housing which they will be better able to maintain. Pending a sale of the marital domicile, the husband shall have the right to continue residence in same with his sons but shall be solely responsible for the payment of the mortgage, taxes and insurance together with all other expenses incurred in connection with the maintenance of said premises. The wife CT Page 593 shall have the option to make any of said payments if the husband does not and she shall be reimbursed for same from the sale proceeds. All unpaid house expenses incurred after the date hereof shall be deducted from the husband's share of the sale proceeds. The court will retain jurisdiction over issues concerning the sale of the marital residence upon which the parties can not agree.
2. The parties shall have joint legal custody of the three minor children. The primary residence of the two boys, Matthew and Michael, shall be with the defendant father. The primary residence of Allison shall be with the plaintiff mother. Each of the parties shall have reasonable, liberal and flexible visitation rights with all of the children and shall endeavor to instill in the children love and respect for the other parent. The parties shall continue therapy and counseling for Michael with Dr. Matefy.
3. The husband shall pay periodic weekly alimony in the amount of $150.00 to the plaintiff for a period of twelve years, or until her remarriage, cohabitation under law or the death of either of the parties, whichever event shall first occur.
4. The defendant shall pay as child support the sum of $110.00 per week until Allison reaches the age of eighteen years or becomes emancipated. The plaintiff mother shall pay no child support as the noncustodial parent of the two sons. The court has given due consideration to the Connecticut Child Support Guidelines and finds that the application of same would be inequitable and inappropriate in this case. This finding is fortified by the present and potential earning capacity of the mother when compared to the present and potential earning capacity of the father. The court has further considered the issue of noncustodial child support when setting the other orders contained herein.
5. The plaintiff wife shall have the 1987 Plymouth Voyager automobile and the defendant shall have the Honda automobile and each shall be responsible for any outstanding loans on their respective automobiles. The defendant husband, however, shall pay the outstanding car taxes on the Voyager automobile.
6. Each of the parties shall have the furniture and furnishings presently in their possession. When the marital residence is sold the wife shall also have all pieces of her parent's furniture currently in the marital residence which she may desire including her parent's bedroom furniture.
7. Defendant shall maintain health insurance for the benefit of the three minor children. The parties shall share equally CT Page 594 any unreimbursed medical and or dental bills incurred on behalf of Allison and the defendant shall be solely responsible for all unreimbursed medical and dental bills for the two sons.
8. If the wife so desires the husband shall maintain her on his current medical insurance for as long as he may legally do so in accordance with the COBRA legislation and she shall be responsible for the payment of all premiums incurred in connection therewith.
9. The husband shall name the wife as beneficiary of a $150,000.00 life insurance policy for as long as he is obligated to pay alimony to her. The husband shall also maintain a $100,000.00 life insurance policy for the benefit of each minor child for so long as his support obligation shall continue for that child.
10. The wife shall be responsible for payment of the following debts as listed on her financial affidavit and indemnify and hold the husband harmless from any liability relating thereto: Steinbachs. Jordan Marsh and the $11,000.00 loan from her father not related to the original home purchase.
11. The husband shall be responsible for the payment of all liabilities as listed on his financial affidavit and indemnify and hold the wife harmless from any liability relating thereto except for the loan relating to the wife's 1987 Voyager.
12. The parties shall be equally responsible for the Fairfield Counseling obligation.
13. The husband shall hold the wife harmless with respect to any previously filed joint income tax returns except for any unreported income of the wife unknown to the husband and any disallowed deductions which are solely attributable to the wife. The husband shall be entitled to claim Matthew and Michael as dependency exemptions and the wife shall be entitled to claim Allison. The parties shall make their income tax returns available to each other for so long as either has a financial obligation to the other in accordance with this judgment.
14. The husband shall execute a Qualified Domestic Relations Order when his United States Army pension vests giving the wife an interest equal to twenty per cent of what he would be entitled to receive if he were vested as of the date of this decree.
15. The parties shall be responsible for the payment of their respective attorney's fees with the exception that the husband shall pay one thousand dollars toward the wife's attorney fees CT Page 595 within a period of three months.
BALLEN, JUDGE