[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties were married in Joliet, Illinois on July 19, 1957, and have been residents of the State of Connecticut for more than twelve months next proceeding the date of the filing of this complaint. There are three adult children issue of this CT Page 1087 34 year marriage; Karen, age 33, Elizabeth, age 31, and William, age 25.
The plaintiff, age 52, is a high school and very recent Smith College graduate. This is her first marriage and she enjoys apparent good health with no stated physical medical problems. She has worked periodically and part time during the course of the marriage in a dress shop, movie theater and in 1966 began a career as a part time real estate broker. She has a New York State Real Estate License and has also worked for a local newspaper and a remodeling firm. The plaintiff entered Smith College in the early 1980's on a Part time basis and graduated in 1991 with a B.A. Degree in History and Art History.
The plaintiff was eighteen years old at the time of her marriage to the defendant, then twenty years old, and a second year student at Illinois University. She relates that the parents of both parties helped the couple financially during the early years of their marriage and that her parents gave the couple $500.00 toward the purchase of their first home. Shortly after his graduation in June, 1959, the husband was employed by General Electric Corporation and the couple moved to Schenectady, New York. The plaintiff chronicled their General Electric years which included six relocations. The plaintiff felt that it was her role in the marriage to "keep things smooth at home and not get in the way" while she assisted her husband's climb up the corporate ladder. She stated that they studied Italian together so that the husband could progress on "a fast track program" and he soon became eligible for a top General Electric position in European Audits in Italy. The husband spent eleven out of twenty-two months in Italy during the period 1963-1966. The husband then became a financial analyst for the president of General Electric in New York City and the couple purchased a home in Tarrytown, New York. He was also transferred to Schenectady, New York, Pittsfield, Massachusetts and to the General Electric Headquarters in Fairfield, Connecticut. In each of these locations the couple jointly purchased and sold houses. On each sale and purchase they rolled over the profit and equity with all of same being invested in the present marital residence located at 690 Old Academy Road in Fairfield, Connecticut. Previously this property was solely in the wife's name but is presently jointly owned.
Plaintiff has not been employed since her college graduation in 1991. She does not possess a Connecticut Real Estate License or teaching certification. She claims to have prepared resumes and pursued several job opportunities but feels poorly qualified to obtain a high paying position. CT Page 1088
The plaintiff's financial affidavit reflects no wage income and $600.00 monthly rental income from a boarder. She lists monthly expenses of $9,623.00 "based on a standard of living during the marriage, some of which are estimated and/or future expenses and indicates that some are currently paid by the defendant." She shows assets of a one-half interest or $208,500.00 in the marital residence which she values at $875,000.00, a 1986 Honda Accord automobile valued at $5,000.00, a one half interest in a 1986 Oldsmobile valued at $2500.00, fur coat and jewelry valued at $7500.00, furniture and furnishings of undetermined value, $1800.00 in a checking account and an IRA of $7500.00. She lists her legal fees of an undetermined amount as her only liability.
The defendant, age 54, is a 1959 graduate of the University of Illinois and is also in good health with no apparent medical problems. He was employed by the General Electric Corporation for approximately 21 years in various higher level capacities relating to the financial operations of the corporation. After 21 years with General Electric the defendant joined the North American Phillips Corporation where he became a vice president and comptroller. In mid 1988 he commenced work at Morgan Stanley Company where he is presently employed. He has always been a substantial earner and presently has a base annual salary of $150,000.00 plus bonus and other additional benefits. His 1989 bonus which he received in 1990 was $182,500.00 and the 1990 bonus which he received in 1991 was $133,500.00. His 1991 bonus which was paid in 1992 was $232,500.00. However, the defendant's annual bonus which is paid in January of the following calendar year is dependent upon both his performance and the performance of the company and is not a guaranteed compensation. The husband may also receive Equity Incentive Compensation Units which are subject to various future conditions and restrictions which effect the value, vesting. trading and liquidity of same. This equity incentive compensation may be in the form of capital accumulation units, a deferred profit sharing plan or an employee stock ownership plan.
The husband removed himself from the marital residence shortly after Thanksgiving of 1990 and occupied the couple's New York apartment until the lease expired. Thereafter, he rented a Stamford apartment where he currently resides. The husband confirmed his wife's claim that her parents gave the couple $500.00 to assist with the first home purchase but added that they have been repaid with gifts on several occasions of $3,000.00 to $4,000.00. The husband further testified that when he departed from the house he left his check book and records in the den of the marital residence and the wife had refused to return same despite his repeated requests. CT Page 1089
The defendant's financial affidavit reflects a gross monthly salary of $12,500.00 with a net monthly income from employment of $4,187.81. He shows net monthly other income of $10,946.25 and total net monthly income of $15,134.06. He lists $14,645.16 in basic monthly expenses. He shows total assets of $472,928.94 of which $193,500.00 represents his one half interest in the marital domicile which he values at $900,000.00. He lists bank accounts of $14,000.00, $4,000.00 in automobiles. a motorcycle valued at $1,000.00, and the balance is in stock options, retirement and capital accumulation plans. He lists miscellaneous personal property, furniture and furnishings of an undetermined amount. The couple belong to the Rolling Hills Country Club and he shows tax and country club liabilities of $46,132.00 with an undetermined amount for attorney fees.
Evidence was presented by both sides concerning the causes for the marital breakdown. The wife relates that the first twenty-five years or so of the marriage were good and she was content. However, she states that at about the time of their oldest daughter's marriage, in late 1985, the husband appeared "troubled, remote and depressed." He commenced counseling in January of 1986 and the wife joined the counseling in March of 1986. She alleged that the husband admitted in 1986 to having had three extra marital affairs each lasting from a period of months to years commencing in 1970. The parties continued to work at saving the marriage and rented a New York apartment in July of 1988. They visited a therapist on a weekly basis and the wife further states that the husband admitted another affair to her in 1990. She claims that the husband requested a separation arrangement at that time which would allow him to see other women but that she refused. The plaintiff relates that she has been under the care of a psychologist, has gained 40 pounds and was taking Prozak as an anti-depressant medication.
The plaintiff stated that in the early morning on the Friday after Thanksgiving in 1990 she hit her husband in the head with a garden mallet as he bent over to fix a kitchen cabinet door at her request. She explained that the act was provoked by the husband's request to stay with another woman. She claims the marriage has broken down irretrievably because of her husband's continuing infidelities.
The husband admitted some of his wife's substantiative allegations concerning the illicit affairs he disclosed to her in 1986. However, the husband's version of the day after Thanksgiving incident of 1990 portrays more premeditation and deliberation by the wife, a one to two pound sledge hammer replaced the garden mallet and the husband described blood running all over his face and down his shirt. "She hit me CT Page 1090 twice, she reached for a big knife and hit her arm and the knife went flying" he added. The husband further related that the wife made three or four threats on his life during the marriage. that he received a newspaper article in the mail about a wife killing her husband while taking Prozak medication and that she on more than one occasion "threatened to get even if it was the last thing that she ever did." The husband claimed that he only wanted to survive within the marriage but that the wife constantly threatened him with divorce, criticized him for not earning enough money and for being inadequate and unable to satisfy her. He relates that the latter situation escalated to a point which caused him to become impotent with her during the period 1980 through 1986. He further noted that they both sought professional help with the physical aspect of the marriage. He described disagreements of an ongoing nature, constant financial pressures by the wife which culminated in her removing $40,000.00 from their joint checking account without telling him for over a month.
The husband was somewhat more gracious than the wife when he freely stated that his wife "did a fine job with the children, kept a good house, was an outstanding cook and a kind and loving mother." The husband related that as late as October of 1990 he told his wife that he could never commence a divorce action and would hereafter be faithful to her and would like to stay married to her.
The evidence presented established that the marriage has irretrievably broken down. Judgment may enter dissolving the marriage on that ground.
With respect to alimony and a division of the property of the parties, the law and elements thereof to be considered are stated in 46b-81 and 46b-82 of the Connecticut General Statutes and are interpreted as follows:
"To begin with, our alimony statute does not recognize an absolute right to alimony. General Statutes 46b-82. Thomas v. Thomas, 159 Conn. 477, 486 (1970). `This court has reiterated time and again that awards of financial settlements ancillary to a marital dissolution, rest in the sound discretion of the trial court.' Posada v. Posada, 179 Conn. 568, 572
(1980).
Although the court is required to consider the statutory criteria of length of marriage, causes for dissolution, the age, health, station in life, occupation, amount and sources of income, assets, and opportunity for future acquisition of assets of each of the parties, Fucci v. Fucci, 179 Conn. 174, 179
(1979), no single criterion is preferred over all others. In CT Page 1091 weighing the factors in a given case the court is not required to give equal weight to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations, the financial circumstances, both actual and potential, are entitled to great weight." Valente v. Valente,180 Conn. 528, 530-531 (1980).
"A property division ought to accord value to those non monetary contributions of one spouse which enable the other spouse to devote substantial effort to paid employment which, in turn, enables the family to acquire tangible marital assets. The investment of human capital in homemaking has worth and should be evaluated in a property division incident to a dissolution of marriage. We hold, accordingly, that an equitable distribution of property should take into consideration the plaintiff's contributions to the marriage, including homemaking activities and primary caretaking responsibilities." Blake v. Blake, 207 Conn. 217 at 230 (1988), where our Supreme Court cited with approval the language of O'Neill v. O'Neill, 13 Conn. App. 300 at 311 (1988).
Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account," Scherr v. Scherr, 183 Conn. 366,368 (1981), this court will not recount those statutory criteria and the evidence, other than has been previously stated. "The court is not obligated to make express findings on each of these statutory criteria, (46b-82 and 46b-81 (c))." Weiman v. Weiman, 188 Conn. 232, 234 (1982).
"The rendering of a judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other." Ehrenkranz v. Ehrenkranz, 2 Conn. App. 416,424 (1984).
The court has carefully considered all of the criteria and requirements set forth in Connecticut General Statutes 46b-56,46b-62, 46b-81, 46b-82 and 46b-84, as well as all other relevant statutes, the cases dealing with the subject and all of the evidence presented in this particular case in reaching the decisions reflected in the following orders.
1. The parties shall cooperate to finalize a sale of the marital residence located at 690 Old Academy Road, Fairfield, Connecticut which shall be sold at the earliest possible date after the husband's fifty-fifth birthday on February 28, 1992, for the highest possible price. After payment of the existing first and second mortgages, brokerage commission and usual closing costs, the net proceeds shall be divided 50% to the wife and 50% to the husband. The wife may occupy said premises prior CT Page 1092 to the sale and the husband shall be responsible for the payment of the mortgages, taxes, necessary repairs and insurance on same. The wife shall be responsible for the payment of all utility bills and other current operating expenses in connection with said premises for so long as she occupies same. The husband shall make all payments encompassed by this order relative to the sale of the marital residence from an account which shall be funded with his 1991 bonus of $232,500.00 received in January of 1992. The husband shall further pay all past due taxes owed by the parties through and for the calendar year 1991 and the Rolling Hills Country Club liability set forth on his financial affidavit from this fund. He shall furnish a monthly accounting to the wife of all funds disbursed from this account.
2. The husband's 1991 cash bonus received in January of 1992, net of all taxes, and less the disbursements as set forth in paragraph 1, shall be divided 50% to the husband and 50% to the wife immediately after the sale of the marital residence.
3. Except as expressly provided for herein, each party is awarded any and all personal property acquired from their respective families. The remaining furniture and personal property shall be divided by the parties. If the parties cannot agree on any item of personal property, it shall be submitted to family relations for mediation and recommendation. If there is still no agreement it shall be submitted to the court which shall retain jurisdiction over the personal property of the parties and all issues pertaining to the sale of the marital residence upon which the parties cannot agree.
4. The husband shall pay alimony to the wife in the amount of $3750.00 per month and 33% of all cash income he receives from his employment over $150,000.00 and up to $250,000.00, whether by way of salary or bonus, until the death of either party, the remarriage of the wife, or her cohabitation under law, whichever event shall first occur.
5. The following existing employment benefits of the husband, all as more fully set forth on his October 21, 1991 financial affidavit and brought current to the date hereof, shall be divided 50% to the husband and 50% to the wife, net of any taxes, and shall be payable to the wife when they are "cashed out according to any restrictions thereon." Said benefits include the 1904 shares of Morgan Stanley stock, approximately 1558 shares of Morgan Stanley stock options, the Morgan Stanley Capital Accumulation Plan having an approximate value of $28,800.00, vesting in 1994 and having no value if defendant leaves the company, the Morgan Stanley 401K Plan having an approximate value of $21,808.00, the Morgan Stanley ESOP having a value of approximately $7500.00. CT Page 1093
6. All other existing IRA accounts of the parties shall also be divided equally between them.
7. The wife shall have the 1986 Honda Accord and the husband shall have the 1986 Oldsmobile automobile.
8. The husband shall have the gun collection and the antiques received from his family. He shall also have all motorcycles including the 1986 Honda motorcycle.
9. The husband shall maintain the wife on his current medical insurance for as long as he may legally do so in accordance with the COBRA legislation and he shall be responsible for the payment of all Premiums incurred in connection therewith for a period of three years. If said benefits are available thereafter, the wife may continue same but she shall be responsible for the payment of all premiums incurred after the first three year period.
10. The husband shall name the wife as irrevocable beneficiary of a $500,000.00 life insurance policy for so long as he is obligated to pay alimony to her.
11. The Parties shall both be liable for any tax liability in connection with previously filed federal, state or local joint income tax returns. However, payment of same shall be from the husband's annual bonus and shall be payable by the parties in the same proportion as they share in said bonus.
12. The husband shall be responsible for the payment of $3,000.00 of the wife's counsel fees in this action with payment to be made within four months of the date hereof.
BALLEN, JUDGE.