[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties were married in Stratford, Connecticut on October 24, 1987 and the plaintiff has been a resident of the State of CT Page 8037 Connecticut for more than 12 months next preceding the date of the filing of this complaint. There are no children issue of this marriage.
The plaintiff wife, age 43, is presently in good health, albeit a back injury for which she is now treating. She is a high school graduate and has attended some college courses. At the time of marriage the wife relates she was employed by MAVCO, a family business which sold, rented and repaired audio and video equipment. She earned between $6.00 and $10.00 hourly but stated she was terminated in May, 1988 because her husband alienated her father and brother. As a result of this situation she still has little to do with her family and is not on speaking terms with some family members. She claims to have been devastated by this family split. Thereafter, she had several different jobs and was employed at County Home Bakery for four years at approximately $8.00 per hour. She worked for three to four years and until December, 1995-1996 for Grand Union as a grocery cashier at $7.00 hourly. Her most recent employment has been with HR Block as a tax preparer where she earns between $7.00 and $8.00 hourly.
The wife relates that at the time of marriage she had some mutual funds, savings and jewelry but same were sold on the advice of her husband. She states that the parties were separated for most of this ten year marriage and lived together "as man and wife" only from late 1987 to early 1990 when they officially separated. Prior to the separation the wife purchased a home in Pennsylvania for the husband which she transferred to his name because "she loved and wanted to spend her life with him." She also claims to have assumed $20,000 of his debts so that he could obtain a mortgage on this property.
The wife testified that she signed an agreement with her husband in 1991 or 1992 concerning finances and sent him about $400.00 monthly for an approximate four year period. She claims that she was never aware of her husband's finances, never discussed this agreement with anyone or consulted an attorney prior to signing it, never received any money from her husband and can no longer afford these payments.
She attributes the breakdown of the marriage to "his love was only there when I sent him money." She states that she presently has 23 credit cards on which she owes approximately $75,000.00.
The defendant husband, age 46, relates that the parties CT Page 8038 married after knowing each other less than six weeks. He states that he had painted and remodeled houses and had several different jobs prior to the marriage. He testified that he has been receiving SSI, Social Security Disability Income, since 1981 for mental and emotional disorders caused by drug and alcohol dependency which have afflicted him since 1971, and that he is presently under treatment at "Allegheny East outside of Pittsburgh"; that his present medications include Prozac, Depakote, Zephrex and Clozaril which help control his mood swings, obsessive compulsive disorders and that he is manic depressive Bi-polar.
He alleges that the wife misled him prior to marriage by claiming that MAVCO was her business, that he has lost money at all jobs and efforts he has made to acquire assets, that the assets he did bring into the marriage were "his good character, spiritual firmness, a truck and some tools", that she brought mutual funds to the marriage but "their separation agreement has become lost in the woods". He states that he needs the monthly $400.00 payments from his wife and believes that their agreement was fair and equitable. He wants his personal belongings from the Bridgeport house where she lives and weekly payments from his wife for the period of 1994 to the present time. The husband further relates that he lost money on the Pennsylvania property but that the wife received no part of the $36,000.00 sale price, that he had previously instituted a divorce proceeding against the wife but that case was dismissed and they had lived together as man and wife for three or four years. He feels that the wife should pay him for the rest of his life because the marriage breakdown was caused by "the wife's unwillingness to go along with the husband's desires."
The wife's financial affidavit reflects a gross weekly income of $243.08 with a net weekly income of $184.56. She lists weekly expenses of $373.39. She shows total assets of $19,941.78 of which $15,000.00 is an expectancy of a one third interest in family owned real estate located at 14 Oakwood Drive, Monroe, Connecticut presently in partition litigation, and against which her father is seeking a $10,000 credit. She lists a $1,400.00 equity in a 1985 Nissan automobile and a $2,000.00 equity in a 1985 Cadillac car, $1500.00 in furniture, $16.78 in a checking account and $25.00 in a credit union savings account. She lists liabilities of $74,920.00 in six credit card debts with a total weekly liability expense of $434.62. CT Page 8039
The husband's financial affidavit shows a gross weekly income from SSI payments of $190.50 and "assistance from friend" of $50.00 for a total net weekly income of $240.50. He lists weekly expenses of $177.85. He shows total assets of $13,925.00 of which $9,000.00 is equity in a Virginia property. He further shows $2,000.00 equity in a 1989 Ford car, $800.00 in a one half interest in a 1984 Cadillac, a Honda motorcycle he values at $485.00, miscellaneous personal property valued at $1,200.00, bank accounts of $440.55, all having a combined value of $4,925.55. He lists liabilities of $27,800.00 in three revolving credit cards having a weekly liability expense of $143.75.
With respect to alimony and a division of the property of the parties, the law and elements thereof to be considered are stated in §§ 46b-81 and 46b-82 of the Connecticut General Statutes and are interpreted as follows:
"To begin with, our alimony statute does not recognize an absolute right to alimony. General Statutes § 46b-82. Thomasv. Thomas, 159 Conn. 477, 486 (1970). `This court has reiterated time and again that awards of financial settlements ancillary to a marital dissolution, rest in the sound discretion of the trial court.' Posada v. Posada, 179 Conn. 568, 572 (1980).
Although the court is required to consider the statutory criteria of length of marriage, causes for dissolution, the age, health, station in life, occupation, amount and sources of income, assets, and opportunity for future acquisition of assets of each of the parties, Fucci v. Fucci, 179 Conn. 174, 179
(1979), no single criterion is preferred over all the others. In weighing the factors in a given case the court is not required to give equal weight to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations, the financial circumstances, both actual and potential, are entitled to great weight." Valente v. Valente, 180 Conn. 528, 530-531
(1980).
Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account," Scherr v. Scherr, 183 Conn. 366,368 (1981), this court will not recount those statutory criteria and the evidence, other than has been previously stated. "The court is not obligated to make express findings on each of these statutory criteria. (§§ 46b-82 and 46b-81 (c))." Weiman v.Weiman, 188 Conn. 232, 234 (1982). CT Page 8040
"The rendering of a judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other." Ehrenkranz v. Ehrenkranz,2 Conn. App. 416, 424 (1984).
The court has carefully examined defendant's Exhibit C, a two page document "made" March 1, 1991, entitled Voluntary Separation and Property Settlement Agreement, together with a one page addendum "made" January 3, 1994. The agreement provides, inter alia, in paragraph 12, "the wife promises to pay the husband for his support and maintenance the sum of $400.00 per month, said sum being a fair and reasonable amount based upon the financial circumstances of the parties and cause, nature and expected duration of husband's relapse (permanent)." Paragraph 13 further provides "the parties agree the monthly monetary support provided for in paragraph 12 hereof is permanent except for cost of living increases; and paragraph 14 provides that the parties agree that, "if and when any divorce proceedings are instituted by either party, this agreement shall be incorporated into any final decree resulting from such proceeding and become a part thereof." An addendum to said agreement dated January 3, 1994 amends paragraph 12 to read "$400.00 per month or 25% of gross monthly income, whichever is higher, to be paid until remarriage or death of husband and wife not to deduct said sum thus paying the required tax as would generally be withheld."
The court has carefully reviewed said agreement and addendum in accordance with Connecticut General Statutes § 46b-66 and finds that the agreement is not fair and equitable. It shall not be incorporated by reference or otherwise be made a part of any court order. Further, the agreement is not fair and equitable when the criteria of §§ 46b-81 and 46b-82 are applied to it as hereinafter set forth. The parties lived together as husband and wife for approximately two to three years of their marriage, the cause of the dissolution was according to the wife when she ran out of money and the husband blames the wife's unwillingness to go along with his desires, and the court finds that the majority of fault was with the husband, they are of the approximate same age, the wife now has a chronic back problem, the husband's drug and alcohol dependency were apparently caused by his voluntary activities, the wife has always worked for a living at approximately $6.00 to $8.00 per hour, the husband's work history is vague and hazy, in part due to the mental and emotional disorders he has suffered since 1971, the husband is presently CT Page 8041 supported by the federal government because of his alcohol and drug dependency since 1981 and he also receives assistance "from a friend", so their incomes are approximately the same, they are both high school graduates, the wife has assets of $4,941.00 and an expectancy of $15,000.00 in assets while the husband has assets of $13,925.00, the wife brought more to and gave more to the marriage than did the husband, the wife presently has $74,920.00 in liabilities while the husband's liabilities are $27,800.00.
Further, the testimony reveals that the wife never discussed this agreement with an attorney or anyone else, that she was not aware of the husband's finances at the time the agreement was signed, the husband prepared or had the agreement prepared, and that the husband possessed paralegal training and took unconscionable advantage of the wife. It would not be fair or equitable to further penalize the wife.
The court has considered the credibility of both parties who took the stand and testified in this matter. It has observed their appearance, attitude, demeanor and testimony upon direct and upon cross-examination. It has also considered the exhibits presented and all of the surrounding circumstances.
The evidence presented established that the court has jurisdiction, the marriage has irretrievably broken down and that a majority of the fault was with the husband.
The court has carefully considered all of the criteria and requirements set forth in Connecticut General Statutes §§46b-56, 46b-61, 46b-81, 46b-82 and 46b-84, as well as all other relevant statutes, the cases dealing with the subject and all of the evidence presented in this particular case in reaching the decisions reflected in the following orders.
1. A decree of dissolution of marriage shall enter on the grounds of irretrievable breakdown of the marriage.
2. No alimony shall be paid or received by either party.
3. Each party shall retain ownership of the assets listed on their respective financial affidavits. Both parties list the 1985 or 1984 Cadillac Seville valued to $2,000.00 which is awarded to the party having legal title to same. CT Page 8042
4. Each party shall be responsible for the liabilities listed on their respective financial affidavits and shall hold the other party harmless thereon.
5. Each party shall be solely responsible for their own attorney fees.
6. The husband shall return all items of personal property belonging to the wife including but not limited to her stereo equipment, record albums, computer and book case.
7. The wife shall return all items of personal property belonging to the husband which she may have in her possession.
8. The wife's maiden name of Louise Holland is restored to her.
Orders shall enter in accordance with the foregoing. Plaintiff's counsel shall prepare the judgment file.
BALLEN, JUDGE