******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

VANESSA L. HAMMEL *v.* MICHAEL J. HAMMEL
(AC 36088)

DiPentima, C. J., and Keller and Flynn, Js.

*Argued March 2—officially released July 28, 2015*

(Appeal from Superior Court, judicial district of
Danbury, Winslow, J.)

*Christopher P. Norris*, with whom, on the brief, was
*Vanessa L. Hammel*, self-represented, for the appellant (plaintiff).

*Deborah L. Grover*, for the appellee (defendant).

*Opinion*

DiPENTIMA, C. J. The plaintiff, Vanessa L. Hammel, appeals from the judgment of the trial court dissolving her marriage to the defendant, Michael J. Hammel, and making certain financial orders and dividing the marital property of the parties. On appeal, the plaintiff claims that the court erred in (1) finding that she had received a bachelor's degree, and (2) ordering her to pay the real estate taxes and common charges for real property awarded to the defendant. We agree that the court erred in finding that the plaintiff had received a bachelor's degree and, accordingly, we reverse the judgment as to the financial orders.[1]

The record reveals the following relevant facts and procedural history. The parties married on December 31, 2004. They had one child during the marriage. In February, 2012, the plaintiff filed a complaint seeking the dissolution of her marriage to the defendant. The matter was tried to the court on April 4 and May 30, 2013.

On June 21, 2013, the court issued a memorandum of decision, making certain financial orders and dividing the marital assets of the parties. In its memorandum of decision, the court made findings of fact with respect to the parties' educational backgrounds and employment histories. The court found that the plaintiff had "completed her bachelor's degree during the marriage in December, 2010, from the Art Institute of Pittsburgh with a major in interior design." The court summarized the plaintiff's employment history as follows: "Shortly after the marriage, the plaintiff worked for PepsiCo. She took off one year after the birth of [the parties' child] in December, 2008. She then returned to PepsiCo and continued there until [she was laid] off in March, 2010. She did not secure a new job until May, 2011, at Ethan Allen. She is now an inventory planner at Ethan Allen earning $51,500 per year. There is no overtime pay available. Her health insurance through work covers the entire family at a cost of $70 per week for medical insurance and $25 per week for dental insurance. The divorce of the parties will result in [the] removal of the defendant from the insurance and a $25 per week reduction in the plaintiff's health insurance costs. The plaintiff's net weekly income is $709. The plaintiff has a PepsiCo 401 (k) plan worth $11,385 and an Ethan Allen 401 (k) containing $998 (net after a loan of $18,750 taken by the plaintiff to pay household expenses and attorney fees). The plaintiff also has a PepsiCo pension that will pay her $529 per month upon her retirement in approximately twenty-four years."

With respect to the defendant, the court found that he had completed high school and had "received a degree from tattoo school in January, 2011." The court also found that "[a]fter completing high school, the defendant worked as a carpenter." In November, 2005,

the defendant suffered a serious injury while at work and, as a result, he was unable to work for more than two years. The court summarized the defendant's employment history as follows: "The defendant was working for his brother as a carpenter for the first year and one-half of the marriage until his November 2, 2005 accident. He received workers' compensation for two years thereafter. He resumed employment as a carpenter in the latter part of 2007, working sporadically part-time for his brother. He supervised the renovations at the house the parties purchased in September, 2009. The defendant's failure to secure full-time employment from 2007 until May, 2013, was a source of conflict between the parties. The defendant started full-time work at Centerline Construction Co. in Greenwich on May 20, 2013. He is a construction supervisor earning $25 per hour. He got his first paycheck June 1, 2013. He receives no overtime pay, no benefits and no holiday pay. There is no retirement plan. There is a possibility he may be able to get health insurance through his new employment. Estimating twenty-six unpaid days per year, the defendant will be earning at a rate of $46,800 per year. Through May in the current calendar year, the defendant earned $700 doing tattoos. Extrapolating that income to the full year would give the defendant additional income of $1680 in 2013. The defendant's average net income is $671 per week. He has no retirement moneys set aside."

In making its financial orders and dividing the parties' marital property, the court stated that it had "considered all the criteria of General Statutes §§ 46b-56, 46b-56c, 46b-62, 46b-81, 46b-82, 46b-84 and the Connecticut child support guidelines in light of the evidence presented. The parties are in equipoise as to age, station, needs, liabilities, occupation, amount and sources of income, earning potential and vocational skills. The plaintiff enjoys advantages over the defendant in such matters as education, health, and the ability to put aside retirement moneys in the future."

On July 11, 2013, the plaintiff filed a motion for articulation, asking that the court explain, inter alia, its finding that she had completed her bachelor's degree during the marriage. On that day, she also filed a motion to reargue postjudgment. On August 26, 2013, the court denied the plaintiff's motion to reargue and iterated that it considered the plaintiff's advantages over the defendant "in such matters as education, health and the ability to put aside moneys for retirement . . . to be of great importance among the criteria of General Statutes § 46b-81." In response to the plaintiff's motion for articulation concerning the bachelor's degree, the court stated that "[o]n April 4, 2013, the plaintiff testified that she got her college degree from the Art Institute of Pittsburgh, completing the degree during the marriage." This appeal followed.

On appeal, the plaintiff argues that the court's finding that she completed a bachelor's degree during the marriage was inaccurate and unsupported by the evidence. The plaintiff further argues that, in light of the court's error and the weight it placed on the parties' educational backgrounds, the case must be remanded for a new hearing on all the financial orders. The defendant argues that the court did not err when it found that the plaintiff had completed a bachelor's degree and that the plaintiff has not met her burden for the matter to be remanded. We agree with the plaintiff that the court erred and that a new hearing on all the financial orders is required.

We first address the dispositive issue of whether the court erred in finding that the plaintiff completed a bachelor's degree. As an initial matter, the defendant argues that the plaintiff cannot raise this issue on appeal because she failed to seek reargument regarding her education, never advised the court that there was a factual error, and never attempted to offer additional evidence on the subject. The defendant asserts that "[i]t is only when a significant error is brought to the court's attention, and the court thereafter agrees, but fails to reconsider its financial orders, that a possible abuse of discretion issue can be successfully raised." The defendant cites to *Traystman* v. *Traystman*, 141 Conn. App. 789, 796–97, 62 A.3d 1149 (2013), to support his position. We are not persuaded.

In *Traystman*, the trial court made financial orders in a dissolution decree on the basis of a flawed calculation of the plaintiff's earning capacity and also failed to allocate certain retirement assets. Id., 795–96. "When this error was brought to the court's attention in the defendant's postjudgment motions, the court declined to alter its financial orders." Id., 796. On appeal, this court held that "[t]he [trial] court's failure to reconsider its financial orders, after being apprised of these significant errors, was an abuse of discretion. Once it was clear that the basis for the orders was flawed, they could not be salvaged by the court's assertion that the errors were inconsequential." Id. We do not read *Traystman*, as the defendant does, to hold that "[i]t is only when a significant error is brought to the court's attention, and the court thereafter agrees, but fails to reconsider its financial orders, that a possible abuse of discretion issue can be successfully raised" on appeal. Rather, *Traystman* holds that, if the trial court fails to reconsider its financial orders after it becomes aware that they were based on significant errors, that failure is an abuse of discretion. The court here became aware of the error when, less than one month after judgment, the plaintiff filed a motion for articulation and clarification as to the court's factual findings on her educational background.

We now turn to the merits of the plaintiff's claim. "The factual findings of a trial court must stand . . .

unless they are clearly erroneous or involve an abuse of discretion." (Internal quotation marks omitted.) *Walpole Woodworkers, Inc.* v. *Manning*, 307 Conn. 582, 588, 57 A.3d 730 (2012). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Internal quotation marks omitted.) *Ackerman* v. *Sobol Family Partnership, LLP*, 298 Conn. 495, 507–508, 4 A.3d 288 (2010).

At trial, in response to questions from her counsel, the plaintiff testified about her educational background:

"[The Plaintiff's Counsel]: . . . Prior to your marriage to [the defendant], had you completed your education?

"[The Plaintiff]: I had some college classes, yes. I did not complete it.

"[The Plaintiff's Counsel]: And have you take—have you completed your college education, since you first met with [the defendant]—first met him?

"[The Plaintiff]: I took classes for interior design. I did a diploma program.

"[The Plaintiff's Counsel]: And did you receive a diploma?

"[The Plaintiff]: I did.

"[The Plaintiff's Counsel]: From where?

"[The Plaintiff]: From the Art Institute of Pittsburgh."

In its response to the plaintiff's motion for articulation, the court cited to this testimony as the basis for its finding that the plaintiff had completed a bachelor's degree. The court stated in its articulation that "[o]n April 4, 2013, the plaintiff testified that she got her college degree from the Art Institute of Pittsburgh, completing the degree during the marriage."

The plaintiff argues that there is no evidence that her diploma from the Art Institute of Pittsburgh was the equivalent of a bachelor's degree and, therefore, the court's finding that she completed a bachelor's degree was inaccurate. In response, the defendant argues that the court did not err because the plaintiff answered in an affirmative manner when her counsel asked her whether she had completed college. The defendant asserts that "[t]he plaintiff's response to whether she 'completed college' and the court's findings in that

regard, were legal, logical and reasonable." We agree that the plaintiff's testimony indicates that she completed college. Completion of college, however, does not necessarily result in the receipt of a bachelor's degree. "College" is defined as "an independent institution of higher learning offering a course of general studies leading to a bachelor's degree" *or* as "an institution offering instruction usu[ally] in a professional, vocational, or technical field." Merriam-Webster's Collegiate Dictionary (11th Ed. 2012) pp. 243–44.

The plaintiff testified that she completed a "diploma program" and that she received a diploma from the Art Institute of Pittsburgh. There was no other evidence presented as to what type of institution of higher learning the Art Institute of Pittsburgh qualifies as, or whether the diploma completed by the plaintiff was a certification, an associate's degree, a bachelor's degree, or some other form of educational achievement. The court's finding that the plaintiff completed a bachelor's degree was therefore speculative. See *State* v. *Bharrat*, 129 Conn. App. 1, 15, 20 A.3d 9 (finder of fact is not entitled to engage in speculation or conjecture), cert. denied, 302 Conn. 905, 23 A.3d 1243 (2011). Even if we make every reasonable presumption in favor of the court's ruling, the record simply does not support the court's finding that the plaintiff received a bachelor's degree. Accordingly, we conclude that the court's finding that the plaintiff completed a bachelor's degree was clearly erroneous.

The plaintiff argues that, because the court's finding that she completed a bachelor's degree was clearly erroneous, the case must be remanded for a new hearing on all the financial orders. In response, the defendant argues that the plaintiff has not met her burden for the matter to be remanded because she failed "to raise the issue of her education with the court postjudgment . . . ." We previously addressed this argument and found it to be without merit. We agree with the plaintiff that the case must be remanded for a new hearing on all the financial orders. The court specifically stated, in both its memorandum of decision on the plaintiff's motion for reargument, which it denied, and in its articulation, that it considered the plaintiff's advantages over the defendant "in such matters as *education*, health and the ability to put aside moneys for retirement" to be "of great importance . . . ." (Emphasis added.) We conclude, therefore, that the court's financial orders were the product of mistake; see *Traystman* v. *Traystman*, supra, 141 Conn. App. 795; and the case must be remanded for a new hearing on all the financial orders.

"A fundamental principle in dissolution actions is that a trial court may exercise broad discretion in awarding alimony and dividing property as long as it considers all relevant statutory criteria. . . . Our standard of review for financial orders in a dissolution action is

clear. The trial court has broad discretion in fashioning its financial orders, and [j]udicial review of a trial court's exercise of [this] broad discretion . . . is limited to the question of whether the . . . court correctly applied the law and could reasonably have concluded as it did. . . . In making those determinations, we allow every reasonable presumption . . . in favor of the correctness of [the trial court's] action. . . .

"This deferential standard of review is not, however, without limits. There are rare cases in which the trial court's financial orders warrant reversal because they are, for example, logically inconsistent . . . or simply mistaken . . . . We cannot countenance financial orders that are the product of mistake, even if they ultimately may be seen to be reasonable." (Citations omitted; internal quotation marks omitted.) Id., 794–95. The trial court's decision "must be based on logic applied to facts correctly interpreted. The rendering of a judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other. . . . Each party is entitled to overall financial orders which reflect the court's discretion and are based upon the facts elicited and the statutory criteria." *Ehrenkranz* v. *Ehrenkranz*, 2 Conn. App. 416, 424, 479 A.2d 826 (1984).

"[W]hen an appellate court reverses a trial court judgment based on an improper alimony, property distribution, or child support award, the appellate court's remand typically authorizes the trial court to reconsider all of the financial orders. . . . The rationale for requiring a reexamination of all of the aspects of the financial orders is their inherent interdependence. . . . Indeed, this state's appellate courts have often described financial orders appurtenant to dissolution proceedings as entirely interwoven and as a carefully crafted mosaic, each element of which may be dependent on the other." (Citations omitted; internal quotation marks omitted.) *Traystman* v. *Traystman*, supra, 141 Conn. App. 797.

The judgment is reversed only as to the financial orders and the case is remanded for further proceedings as to all the financial orders; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] Because we agree with the plaintiff's first claim and reverse the judgment and remand the case for reconsideration of all the financial orders, we need not reach her second claim.