[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties were married at Bloomington, Indiana on August 28, 1965, and have been residents of the State of Connecticut for more than 12 months next preceding the date of the filing of this complaint. There is one adult child issue of this 27 year marriage, Philip, age 20, who is currently finishing his second year at Columbia University. The wife has paid for the son's first two years of college and volunteered during the course of the hearing that she would also pay for his last two years of college. The husband also claimed to have contributed to the son's college expenses but to a lesser amount.
The plaintiff wife, age 50, is a Purdue University graduate with a master's degree from Cornell University. This is her first marriage and she enjoys good health albeit a 1984 mastectomy operation which requires her to have semi annual medical check ups. She further relates to being a recovering alcoholic as is also her husband.
The couple purchased their first home in Rochester, New York for $25,000.00 with a $4,000.00 down payment which was furnished from the savings of both parties. They sold this house for $45,000.00 in 1977 and purchased the present marital residence in Westport, Connecticut for $105,000.00 with a $78,000.00 mortgage. The wife's mother deceased in 1972 and her father, a business professor at Indiana University, deceased in 1979. During this period the wife inherited substantial assets including a now 50% partnership interest in Harry Stephens Company, formerly an automobile dealership and presently the lessor of the real estate to an Oldsmobile dealership, plus additional stocks, bonds and other assets presently solely owned by the plaintiff wife. There are also jointly held assets of the parties as well as assets owned solely by the husband.
The wife has worked periodically and part time during the course of the marriage. In 1988, she returned to school and took advanced computer courses but left Yale without her doctorate degree. She returned to work during the period of 1989-1991 teaching and working at a laboratory. In August of 1991 she commenced full time regular employment. She is presently employed by Haskins Laboratories, Inc., a research and development company. She is a computer programmer engaged primarily in academic research. The wife feels that she has reached her maximum earning capacity and would like to retain all of her solely owned assets and share equally in the jointly held assets.
The plaintiff's financial affidavit reflects a gross weekly wage income of $661.00 with a net wage income of $453.00. She shows additional unearned other income of $953.00 from which she CT Page 7139 deducts federal and state taxes leaving $679.00 and a total net weekly income of $1,133.00. She lists weekly expenses of $1,405.00 and attributes $534.00 of this amount to her son's college tuition, room, board and miscellaneous expenses with $116.00 for her own miscellaneous expenses. She values the jointly owned family residence located at 1 Pine Street, Westport, Connecticut at $400,000.00 with her one half equity valued at $165,000.00. She lists other assets held jointly with her husband and values her one half share as $20,250.00 in stocks and bonds plus $15,000.00 in a savings account.
The plaintiff wife lists individual assets of a 1990 Honda automobile which she values at $6,000.00 and a 1984 Audi valued at $500.00, jewelry of $5,000.00, miscellaneous personal property and furnishings of $10,000.00, $117,000.00 in savings, 2,200 shares of PPG stock which she values at $100,000.00, 500 shares of Indiana Power Light valued at $16,000.00, a Smith Barney portfolio valued at $235,000.00, $22,500.00 in a Dreyfuss Fund, $37,000.00 in bonds and $3,700.00 in Krupp III. The wife owns an interest in two closely held family companies and assigns a book value of $87,000.00 to her interest in Harry Stephens and a $20,000.00 book value to her interest in Econobuilt. Both items are marked with an asterisk indicating "pending valuation." The court has not been advised of any different valuation and it would appear the stated book values are conservative. This conclusion is fortified by a 1991 income tax return indicating income from Harry Stephens in the approximate amount of $40,000.00.
The wife attributes a modest total cash value of $860,000.00 to her assets and she shows no liabilities. The husband claims that her total net annual income exceeds $80,000.00.
The defendant husband, age 50, is also a Purdue University graduate and holds an MBA degree from Cornell University. He was employed by the Xerox Corporation for almost 20 years and was earning approximately $60,000.00 plus annually when he left XEROX in 1986 and entered business for himself. He formed The Advantage Group, Inc., which primarily markets and sells real estate software to Fortune 500 corporations and other major companies with more than 100 properties. He relates to leaving Xerox as they were in the process of down-sizing and he felt that going into business for himself would be a financially advantageous move particularly in view of the fact that Xerox had already spent approximately $275,000.00 on this particular project. The husband testified that The Advantage Group has operated at a loss in each year since its 1986 origination and the total over-all loss is approximately $45,000.00 to $50,000.00. He relates to having loans of $45,000.00 which CT Page 7140 includes a bank loan of $25,000.00 in connection with the business. The husband may have a valuable asset in a law suit which he is presently pursuing against his former computer programmer who left him and went into a competing business despite having been paid $60,000.00 yearly for five years by the husband.
The husband relates to being in good health. However, he is also a recovering alcoholic whose recovery has been somewhat slower than that of his wife.
The husband's financial affidavit reflects net weekly income of $554.00 from retirement investments and $177.60 from joint investments with his wife for a total net weekly income of $731.60. He claims to receive no income from The Advantage Group, Inc. He lists $1,100.00 in weekly expenses with over $400.00 of same directly associated with maintaining the marital residence.
The husband sets forth the following assets. He values the marital residence at $350,000.00 and claims a net one half interest of $140,000.00 in same. He lists $473.00 in a joint checking account and $2,245.00 in his checking account. He owns $11,901.00 in securities and lists $8,612.00 as his interest in joint securities. He shows $56,398.00 in bonds and also lists $12,500.00 as his one half interest in jointly held bonds. He lists $100,326.00 in real estate and limited partnerships and $27,277.00 as his one half interest in jointly held real estate and limited partnerships. He values his 1987 Audi at $12,000.00 and his 22 foot Catalina sailboat at $5,500.00. He lists his one half interest in jewelry, home furnishings, antiques and artwork at $20,000.00, $15,000.00, $7,500.00 and $3,000.00 respectively. He shows $42,000.00 in stocks and a loan to The Advantage Group, Inc. He lists J.M.P. partnership at $6,000.00 and values his interest at $3,060.00. His total assets are listed at $464,793.00 and he reflects no liabilities.
Evidence was presented by both sides concerning the causes for the marital breakdown. The parties are both admittedly recovering alcoholics with the wife's recovery somewhat more advanced than that of the husband. The wife relates that she has recently realized that she needed to lead a different life style based upon her present sexual orientation. "A friend offered me a house for three weeks and when I moved out of the marital residence it became apparent that I could not continue in the marriage." The wife felt that she had been supporting the family since her husband left XEROX in 1986 with a $130,000.00 severance package. She further related that her passive income had been used by the family over the years for cars, vacations and joint investments. She testified that the CT Page 7141 husband may have relied upon net income when he left XEROX but that "the free ride is over and the husband should now obtain a job." She concluded that the husband's future earning potential exceeded her own and that The Advantage Group, Inc. was a viable business.
The husband did not specifically assign fault for the marital breakdown and did not blame the wife for her gender orientation change. He testified that it was a judgment call as to whether he should continue in his own business or seek outside employment. It was the husband's claim that his earnings greatly exceeded the wife's earnings during the marriage. He further stated that some of their jointly owned assets were made possible by his earnings. The husband testified that he needed to receive $21,600.00 in yearly alimony from his wife in order to maintain his present standard of living. However, with his prior corporate experience and Cornell M.B.A. degree, his future earning capacity in all probability exceeds that of his wife. Further, the present and future economic picture of TAG, Inc. may well prove to be brighter than portrayed. The husband has been solely occupying the marital residence for some time and has been paying the expenses of same from a $30,000.00 joint account of the parties which is almost depleted.
The evidence presented established that the marriage has irretrievably broken-down. Judgment may enter dissolving the marriage on that ground.
With respect to alimony and a division of the property of the parties, the law and elements thereof to be considered are stated in 46b-81 and 46b-82 of the Connecticut General Statutes and are interpreted as follows:
"To begin with, our alimony statute does not recognize an absolute right to alimony. General Statutes 46b-82. Thomas v. Thomas, 159 Conn. 477, 486 (1970). `This court has reiterated time and again that awards of financial settlements ancillary to a marital dissolution, rest in the sound discretion of the trial court.' Posada v. Posada, 179 Conn. 568, 572
(1980).
Although the court is required to consider the statutory criteria of length of marriage, causes for dissolution, the age, health, station in life, occupation, amount and sources of income, assets, and opportunity for future acquisition of assets of each of the parties, Fucci v. Fucci, 179 Conn. 174, 179
(1979), no single criterion is preferred over all others. In weighing the factors in a given case the court is not required to give equal weight to each of the specified items. CT Page 7142 Nevertheless, it is rather obvious that in making financial determinations, the financial circumstances, both actual and potential, are entitled to great weight." Valente v. Valente,180 Conn. 528, 530-531 (1980).
"A property division ought to accord value to those non monetary contributions of one spouse which enable the other spouse to devote substantial effort to paid employment which, in turn, enables the family to acquire tangible marital assets. The investment of human capital in homemaking has worth and should be evaluated in a property division incident to a dissolution of marriage. We hold, accordingly, that an equitable distribution of property should take into consideration the plaintiff's contributions to the marriage, including homemaking activities and primary caretaking responsibilities." Blake v. Blake, 207 Conn. 217 at 230 (1988), where our Supreme Court cited with approval the language of O'Neill v. O'Neill, 13 Conn. App. 300 at 311 (1988).
Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account," Scherr v. Scherr, 183 Conn. 366,368 (1981), this court will not recount those statutory criteria and the evidence, other than has been previously stated. "The court is not obligated to make express findings on each of these statutory criteria, (46b-82 and 46b-81(c))." Weiman v. Weiman, 188 Conn. 232, 234 1982).
"The rendering of a judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other." Ehrenkranz v. Ehrenkranz, 2 Conn. App. 416,424 (1984).
The court has carefully considered all of the criteria and requirements set forth in Connecticut General Statutes 46b-56,46b-62, 46b-81, 46b-82 and 46b-84, as well as all other relevant statutes, the cases dealing with the subject and all of the evidence presented in this particular case in reaching the decisions reflected in the following orders:
1. The parties shall cooperate to finalize a sale of the marital residence which shall be sold at the earliest possible date for the highest possible price. After payment of the existing first mortgage, brokerage commission and usual closing costs, the net proceeds shall be divided 62.5% to the husband and 37.5% to the wife. Pending a sale of the marital residence, the husband may continue to occupy same and the parties shall each pay one half of the mortgage, taxes and insurance for the first six months from the date hereof. Thereafter, the husband shall be solely responsible for the payment of said expenses CT Page 7143 provided the premises have not been sold, he is occupying same and the wife is not. In the event that after the first six months neither party or both parties occupy the marital residence the expenses of same shall be divided equally until it is sold.
2. Except as expressly provided for herein, each party is awarded any and all personal property including furniture, home furnishings, antiques, artwork, and jewelry acquired from their respective families or purchased solely with their separate funds. The remaining furniture and personal property shall be divided by the parties. If the parties cannot agree on any item of personal property, it shall be submitted to Family Relations for mediation and recommendation. If there is still no agreement, it shall be submitted to the court which shall retain jurisdiction over the personal property of the parties and all issues pertaining to the sale of the marital residence upon which the parties cannot agree.
3. The husband shall have the 1987 Audi 4000 and the 22 foot Catalina sailboat and the wife shall have the 1990 Honda Civic and the 1984 Audi for the benefit of her son.
4. The wife shall have all items as listed on her Financial Affidavit which are solely in her name.
5. The husband shall have all items as listed on his Financial Affidavit which are solely in his name.
6. Each of the parties shall retain a one-half interest in all jointly owned items not otherwise expressly provided for in these orders.
7. Neither of the parties shall pay alimony to the other.
8. The parties shall be responsible for the payment of their respective attorney's fees.
BALLEN, J.