[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties were married in Bridgeport, Connecticut on September 19, 1970. At the time of this hearing there was one minor child, Lauren, born February 29, 1980, who is presently a senior at Bunnell High School in Stratford, Connecticut. There are two other adult children issue of this twenty-seven year marriage, Meghan, age 24 of Westport, Connecticut and Kevin, age 20, a junior at the University of Connecticut.
The plaintiff, age 50, is a high school graduate who also attended New Haven College for two years. This is her first marriage and she enjoys good health with no stated medical problems. She worked periodically and mostly part-time during the early years of her marriage for the Southern New England Telephone Company, Gimbel's Department Store on two occasions, and Fairfax Cardinal Aviation. Most of her work experience was with her husband and his electrical contracting business known as Meg Electric, Inc. However, she has not worked full time since the birth of her first child and has no retirement benefits.
The wife explained that Meg Electric started operation in 1977-78 "out of their home with an office in the basement and that she was the office." The wife was an officer and director of Meg Electric but never a stockholder and worked mostly without compensation "on and off" for approximately an eleven year period. She handled the invoices, accounts receivable and payable and in general ran the office. She related that Meg Electric grew larger and the number of its employees fluctuated between two and fourteen. She was familiar with the gross sales of Meg Electric which she stated went over a million dollars yearly on several occasions. Meg Electric moved its operation to 955 Connecticut Avenue, in the 1986-88 period when the husband purchased that property for between $225,000 and $250,000 dollars. The wife further testified that the husband drew a salary and also received rental income from Meg Electric and the two tenants who leased space at 955 Connecticut Avenue. She also explained that some of her husband's personal expenses such as his car, life and medical insurance, entertainment and other expenses were paid by Meg Electric in addition to the salary he also received. CT Page 5187
The wife testified that by agreement of the parties she has been receiving $2,500 monthly from her husband to pay the home mortgage, taxes and insurance on the marital residence plus $450 weekly of which $183 was alimony and $267 was for child support. She stated that on September 28, 1996, her husband "told her that he was leaving and he just walked out." She claimed to have been "a basket case, depressed and with no motivation" I when her husband left. She stated that he told her that he would be at the business address on Connecticut Avenue but that in reality he had moved in with another woman, S.Z., who was 35 years old and that he is still with her. The wife has made some effort to find employment during the last several months and has had interviews but no job offers. She states that she is "not computer literate and that her job skills are not current." She later admitted that both parties had previously discussed their unhappiness in the marriage, that she had suggested marriage counseling but that the husband didn't think it would help.
The wife was particularly upset that when she asked her husband to fix the swimming pool liner, he drained the pool but did not fix the liner and left the pool in an unusable condition. Further, he would not help with the fall leaf cleanup as "he didn't live there anymore." The husband later stated that he tried to fix the pool liner but that he was unable to do so and was very much against spending about $8,000 in 1993 to fix the pool.
The wife's financial affidavit reflects her occupation as "homemaker" with a $100 weekly net income and she itemizes $1450 in weekly expenses. She lists the marital dwelling at 175 Hinman Street, Stratford, Connecticut at $325,000 encumbered by a $70,500 mortgage, a $99,600 home equity loan, a $13,000 business lien, and an IRS lien of $11,500 leaving a net equity of $130,400. She also shows an investment in Meg Electric, Inc. of unknown value, together with household furnishings of unknown value and an IRA-Kemper fund which she values at $5,078 for a total cash value of $135,478 in assets. Her listed liabilities total $35,594 and include credit card debt of approximately $11,000 which she testified represents "pre-separation debt," $15,450 in loans from her family to assist her with living expenses after her husband left, $7500 which she borrowed from her children to pay other outstanding bills and an $1800 bank loan to finance a family trip to Jamaica some twelve years ago.
On cross examination the wife stated that she had looked for CT Page 5188 employment at about five different businesses during the fourteen month separation, could not afford therapy after the husband left, that there were about three times during the marriage when the couple was unhappy with each other, five years ago, twelve years ago and another time during the marriage but that they had previously been able to reconcile their differences. However, she did not feel that the marriage was over until the husband advised her in September of 1996, that he was moving out. She added that she knew he was having a sexual affair with another woman because he told her so. The wife concluded her testimony by stating that she felt it was a good marriage for twenty-six years, that she worked with her husband, never had need to see a lawyer or call one and was never unfaithful to him or even thought about it.
The defendant husband, age 51, is a University of Connecticut college graduate in apparent good health, albeit a "minor heart attack suffered last year" which resulted in an angioplasty procedure. He related that his first job was with Carpenter Steel as an inside customer representative and that he has been an electrical contractor and President of Meg Electric for about twenty-one years. The husband stated that the sources of his income were from Meg Electric sales, rental income from Meg Electric and the two other tenants who lease space in his 955 Connecticut Avenue real estate. On questioning by the wife's attorney he readily admitted that he was living with the "other woman" and that he paid the rent and all utilities in their present residence. He stated that he had expenses of approximately $106,000 yearly, recently had to borrow $8,000 from his mother and that he owes approximately another $8,000 in medical bills. He testified that he is the president and sole stockholder of Meg Electric but could not put a value on the business. He stated that "I am the business" which is now down to two employees from a high of fourteen and owns only three trucks. The husband graciously agreed that his wife during the marriage cleaned the house, did all of the laundry, cooked all of the meals, raised their three children and never had the assistance of household help, a cleaning lady or a gardener. When questioned about his finances the husband explained the $31,698 on his financial affidavit was the amount he borrowed from the Corporation which he has yet to pay back.
The husband also stated he borrowed $8,000 from his mother which he must pay back even though it is not listed on his Financial Affidavit. He also has a $500,000 life insurance policy with his wife as the present beneficiary and further pay for his CT Page 5189 son's college expenses.
When questioned by his lawyer, the husband testified that this was the fourth time the couple had serious marital problems. On the first three occasions, the wife never mentioned counseling. On this occasion they both agreed they no longer loved each other and were "two individuals going in two different directions." He claims that he told her he was going to move into his shop and moved out of the house in late September with that intention but either that night or shortly thereafter he began living with S.Z. whom he had known for many years through his electrical business. However, he strongly denied that he had intimate relations with her prior to his leaving the marital residence and that he did not leave his wife to be with another woman.
The husband's financial affidavit reflects a gross weekly wage of $900 with a net of $708.93. He lists additional rental income of $848 and deducts $415 from same leaving a net of $433 and a total net weekly income of $1141.73. He shows $2047 in weekly expenses. The husband also lists $91,698 in liabilities consisting of credit card debt in the amount of $22,420 for which he takes responsibility, a credit card debt of $10,980 which he lists as joint, a debt to Meg Electric of $31,698, various medical bills of $11,000, IRS taxes of $4600 and an estimated debt to IRS for 1997 taxes. He shows total assets of $61,200 itemized as follows: $65,000 representing a one-half interest in the marital residence, a minus $14,000 for his business property at 955 Connecticut Avenue, Bridgeport, which he values at $90,000 and is encumbered by at $104,000 mortgage. This is the same property he purchased in the late 1980's for approximately $250,000. He also lists a 1991 Isuzu Rodeo vehicle at $5,000 and a 1985/86 Dodge van at $1000. He values office equipment at $3000, lists twenty shares of McKesson stock at $1200 and does not ascribe a value to his ownership of Meg Electric, Inc.
The income tax returns and relative information presented to the court in plaintiff's exhibits A, C and D reflect the husband's earnings at $87,487 for 1993, $51,777 for 1994, $59,890 for 1995 and $34,323 for 1996, which averages out to $58,369 yearly for each of the last four years.
The evidence presented established that the marriage has irretrievably broken down and that a majority of the fault was with the husband. CT Page 5190
With respect to alimony and a division of the property of the parties, the law and elements thereof to be considered are stated in §§ 46b-81 and 46b-82 of the Connecticut General Statutes and are interpreted as follows:
"To begin with, our alimony statute does not recognize an absolute right to alimony. General Statutes § 46b-82. Thomasv. Thomas, 159 Conn. 477, 486 (1970). This court has reiterated time and again that awards of financial settlements ancillary to a marital dissolution, rest in the sound discretion of the trial court.[1] Posada v. Posada, 179 Conn. 568, 572 (1980).
Although the court is required to consider the statutory criteria of length of marriage, causes for dissolution, the age, health, station in life, occupation, amount and sources of income, assets, and opportunity for future acquisition of assets of each of the parties, Fucci v. Fucci, 179 Conn. 174, 179
(1979), no single criterion is preferred over all the others. In weighing the factors in a given case the court is not required to give equal weight to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations, the financial circumstances, both actual and potential, are entitled to great weight." Valente v. Valente, 180 Conn. 528, 530-531
(1980).
"A property division ought to accord value to those non monetary contributions of one spouse which enable the other spouse to devote substantial effort to paid employment which, in turn, enables the family to acquire tangible marital assets. The investment of human capital in homemaking has worth and should be evaluated in a property division incident to a dissolution of marriage. We hold, accordingly, that an equitable distribution of property should take into consideration the plaintiff's contributions to the marriage, including homemaking activities and primary caretaking responsibilities." Blake v. Blake,207 Conn. 217 at 230 (1988), where our Supreme Court cited with approval the language of O'Neill v. O'Neill, 13 Conn. App. 300
at 311 (1988).
Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account," Scherr v. Scherr,183 Conn. 366, 368 (1981), this court will not recount those statutory criteria and the evidence, other than has been previously stated. CT Page 5191 "The court is not obligated to make express findings on each of these statutory criteria. (§§ 46b-82 and 46b-81 (c))."Weimanv. Weiman, 188 Conn. 232, 234 (1982).
"The rendering of a judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other." Ehrenkranz v. Ehrenkranz,2 Conn. App. 416, 424 (1984).
The court has carefully considered all of the criteria and requirements set forth in Connecticut General Statutes §§46b-56, 46b-61, 46b-81, 46b-82 and 46b-84, as well as all other relevant statutes, the cases dealing with the subject and all of the evidence presented in this particular case in reaching the decisions reflected in the following orders.
1. The evidence presented established that the court has jurisdiction, the marriage has irretrievably broken down and judgment shall enter dissolving the marriage.
2. The parties shall cooperate to finalize a sale of the marital residence located at 175 Hinman Street, Stratford, Connecticut which shall be sold at the earliest possible date after Lauren's high school graduation in June, 1998, for the highest possible price. After payment of the existing bank mortgage, home equity loan, People's Bank Visa, Discover Card, Chemical Bank Visa, the brokerage commission and usual closing costs, the net proceeds shall be divided 75% to the wife and 25% to the husband. The wife may continue her sole occupancy of said premises prior to the sale. The husband shall pay any I.R.S. or business related liens on said property from his share of house proceeds. Either party may return to court for further orders concerning the house sale if it is not sold within ninety days after immediate listing.
3. The husband shall continue to pay $2500 monthly to the plaintiff until the sale of the marital home and the plaintiff shall continue to pay the first mortgage, equity loan, taxes, insurance and upkeep on same until the property is sold.
4. The wife shall have physical custody of the minor child, Lauren, until she graduates from high school and the husband shall have reasonable, flexible and liberal visitation.
5. The defendant shall continue to pay unallocated alimony and support CT Page 5192 to the plaintiff in the amount of $450.00 weekly, as he has done since the pendente lite order of February 13, 1997, up to the sale date of the marital residence.
6. The defendant shall restore the pool to a useable condition at his expense prior to the listing and sale of said premises.
7. After sale of the marital residence the defendant shall pay to the plaintiff as alimony the amount of $400 per week, each week until the death of either party, her remarriage or cohabitation pursuant to Connecticut General Statutes § 46b-86b, which ever shall first occur.
8. The defendant shall retain all of his right, title and interest in and to the Connecticut Corporation known as Meg Electric, Inc. and also to the real estate known as 955 Connecticut Avenue, Bridgeport, Connecticut. All Meg Electric liabilities shall be the defendant's sole responsibility.
9. The husband shall indemnify and hold the wife harmless for any previously filed joint tax returns, both Federal and State. The husband shall also be solely liable for any and all tax liabilities for Meg Electric, Inc. both past and future.
10. The husband shall maintain his existing life insurance policy in the amount of $500,000 and declining to $250,000 on husband's sixty-fifth birthday, naming the wife as irrevocable beneficiary for so long as he has an alimony obligation and shall provide proof of coverage and beneficiary designation on a yearly basis.
11. The contents of the home shall be divided in the same proportion as the net sale proceeds.
12. The wife shall retain her IRA-Kemper fund in the approximate amount of $5100.
13. Each of the parties shall be responsible for their own attorney fees.
14. Each party shall be liable for all liabilities listed on their respective financial affidavits unless previous orders have entered concerning same. The husband shall also be responsible for those credit cards in his name and the American Express account.
15. The wife shall maintain the lease payments on the Volkswagen CT Page 5193 until the lease expires in July 1999. The husband shall pay the car insurance until said lease expires.
16. The husband shall maintain medical insurance for the minor child for so long as he has a child support obligation.
17. The parties shall retain all assets listed on their respective Financial Affidavits unless contrary orders have entered concerning same.
BALLEN. J.